**Fred J. BOWEN**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee.

Dec. 19, 1972.

Burkett C. McInturff and Shelburne Ferguson, Kingsport, for plaintiff in error.

David M. Pack, Atty. Gen., State of Tennessee, Bart Durham, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Kingsport, for defendant in error.

## OPINION

McCANLESS, Justice.

The petitioner, Fred J. Bowen, was convicted of murder in the first degree and sentenced to death. The Court of Criminal Appeals affirmed the judgment of the Criminal Court, one of the judges in a separate concurring opinion recommending that the Governor commute the death sentence to one of imprisonment for ninety-nine years. We granted certiorari, heard oral argument, and took the case under advisement. The Supreme Court of the United States on June 29, 1972, in Furman v. Georgia, Jackson v. Georgia, and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, delivered an opinion in which they said:

"The Court holds that the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The judgments in each case is therefore reversed insofar as it leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings."

Our study of the record in this case convinces us that the trial was conducted without reversible error and that the court lawfully and constitutionally imposed the sentence of death on the petitioner in accordance with the law as it then existed.

When the Criminal Court convicted and sentenced the petitioner to death the Supreme Court of the United States had not adjudged the death penalty to be in violation of the federal constitution; indeed, on May 3, 1971, in the case of McGautha v. California and Crampton v. Ohio, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711, the Court affirmed judgments in cases in which juries had imposed sentences of death when there were no standards to guide their discretion in determining whether to impose or to withhold the death penalty, expressly holding that the judgments in these circumstances did not violate due process of law.

After the Supreme Court of the United States decided the *Furman, Jackson* and *Branch* cases, supra, the Governor of Tennessee commuted the petitioner's sentence of death to one of ninety-nine years' imprisonment.

There are two questions now to be answered: (1) Did the judgment of the Supreme Court of the United States in the *Furman, Jackson,* and *Branch* cases make void the judgment in this case? (2) If the judgment was not thus made void, then what is its effect on the judgment as the Governor has commuted it from death to imprisonment for a term of ninety-nine years?

■ The answer to the first question must be that the judgments entered by the United States Supreme Court in the *Furman, Jackson,* and *Branch* cases had no direct effect whatsoever on the judgment in this case. While the opinions of the United States Supreme Court, and the conclusions arrived at, furnish a basis in a proper case for the future invalidation of a death sentence—probably in this case—invalidation was not accomplished instanter, by those judgments. That could be accomplished only by the future application of the principles settled in the Georgia and Texas cases to the death penalty part of the judgment in the present case.

There is no case in point to cite in support of this statement. It is supported, however, by accepted fundamental rules of law relating to the finality of judgments. This proposition is stated in 46 Am.Jur.2d, Judgments, § 14, p. 322, this way:

"Indeed, it is a general principle that where a court has jurisdiction over the person and the subject matter, and the judgment rendered is not in excess of the jurisdiction or power of the court, no error or irregularity can make the judgment void. Such a judgment may be, under proper circumstances, voidable, but until avoided is regarded as valid."

In § 19 of this same topic, the following is said:

"Notwithstanding earlier holdings or expressions to the contrary, the general rule now supported with virtual unanimity is that the fact that a judgment in a civil action is based upon an unconstitutional statute or ordinance does not render it void or deprive it of its effect as a judgment."

■■ We conclude, therefore, that the judgment in a criminal case, while it is in process of appellate review, cannot be regarded as void, because of the pronouncement of a judgment in another case. Conceding, as we do, that the United States Supreme Court's opinions are binding on this Court, we cannot concede that what it has to say has the immediate effect of voiding judgments of this Court which are not involved in proceedings before it. After the pronouncement of the Georgia and Texas opinions by the United States Supreme Court, it remained for the courts of this state to apply the principles settled therein to its judgments; which were presumptively valid until that had been done.

So, at the time the Governor of Tennessee commuted the death sentence in this case to ninety-nine years, it stood as the judgment in any other criminal case, subject to being corrected as might be required to make it conform to the federal constitution as required by the United States Supreme Court's opinions in the *Furman, Jackson,* and *Branch* cases, supra. It was simply a judgment in a criminal case that was subject to review as to legal or constitutional infirmities by the appellate processes afforded in this state.

In the year 1914 the Supreme Court of Minnesota in State ex rel. Murphy v. Wolfer, 127 Minn. 102, 148 N.W. 896, wrote this:

"It is well settled that a commutation of a sentence is a substitution of a less for a greater punishment. After commutation the commuted sentence is the only one in existence, and the only one to be considered. After commutation, the sentence has the same legal effect, and the status of the prisoner is the same, as though the sentence had originally been

for the commuted term. Johnson v. State, 183 Ala. 79, 63 South. 163; In re Hall, 34 Neb. 206, 209, 51 N.W. 750, 5 Op. of Attys. Gen. (U.S.) 370; Lee v. Murphy, 22 Grat. (Va.) 789, 799, 12 Am.Rep. 563; In the Matter of Sarah M. Victor, 31 Ohio St. 206, 208.

■ What, then, was the effect of the order of commutation on this judgment? The answer is that after the order of the governor commuting the sentence to ninety-nine years, the judgment of conviction and the sentence then stood as if it had been the verdict and judgment pronounced in the first instance. It became at that time, and is now, a judgment of conviction for ninety-nine years.

In the cases of State ex rel. v. Garrett, 135 Tenn. 617, 188 S.W. 58, L.R.A., 1917B, 567 [1915]; and Battistelli v. State, 141 Tenn. 565, 213 S.W. 417 [1919], our Court expressed the opinion that a pardon was not complete without acceptance; but with respect to commutation it is generally, if not universally, held that the convict's consent is not an essential element of its validity. The question seems never to have been adjudicated in Tennessee, but in Biddle v. Perovich, 274 U.S. 480, 47 S.Ct. 664, 71 L.Ed. 1161, 52 A.L.R. 837 [1927], the Supreme Court of the United States in an opinion by Mr. Justice Holmes said:

"Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent determines what shall be done. So far as a pardon legitimately cuts down a penalty it affects the judgment imposing it. No one doubts that a reduction of the term of an imprisonment or the amount of a fine would limit the sentence effectively on the one side and on the other would leave the reduced term or fine valid and to be enforced, and that the convict's consent is not required.

"When we come to the commutation of death to imprisonment for life it is hard to see how consent has any more to do with it than it has in the cases first put. Supposing that Perovich did not accept the change, he could not have got himself hanged against the Executive order. Supposing that he did accept, he could not affect the judgment to be carried out. The considerations that led to the modification had nothing to do with his will. The only question is whether the substituted punishment was authorized by law—here, whether the change is within the scope of the words of the Constitution, article 2, § 2: 'The President . . . shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment.' We cannot doubt that the power extends to this case. By common understanding imprisonment for life is a less penalty than death."

In 59 Am.Jur.2d, Pardon and Parole, § 65, the following appears:

"The power to commute a sentence is a part of the pardoning power and may be exercised under a general grant of that power. The general power necessarily contains in it the lesser power of remission or commutation. If the whole offense may be pardoned, a fortiori, a part of the punishment may be remitted or the sentence commuted."
and, in the same section:

"It has been held in a number of cases that acceptance or consent of the convict is not essential to the validity of the commutation of sentence, . . ."

Since we have statutes relating to executive clemency, Sections 40–3501 through 40–3508, T.C.A., which have not been employed in this case, we call attention to the Governor's power under the constitution and independent of these provisions of the Code.

Article 3, Section 6, of the Constitution of Tennessee provides that the Governor "shall have power to grant reprieves and pardons, after conviction, except in cases of impeachment". The Court held in State ex rel. Rowe v. Conners, 166 Tenn. 393, 61 S.W.2d 471 [1933], that in the exercise of this constitutional power the Governor can no more be controlled by the courts than he can by the legislature in the exercise of these powers, so these statutes confer no more power on the Governor than he is granted by Article 3, Section 6 of our Constitution, and they take none of this power from him.

In the face of all this, it cannot validly be arged that the bare fact that the prisoner might receive a lesser sentence in the event of a jury trial, requires that his case be remanded. These legal principles establish that the judgment of death, though subject to avoidance, was yet valid at the time the Governor commuted it to ninety-nine years, that this commutation became effective without the consent of the defendant, and its legal effect was to leave the judgment as though it had first been pronounced as a judgment sentencing the defendant to ninety-nine years in the penitentiary. And, the unconstitutional part, that of death, being removed, the judgment is valid and enforceable.

The basis on which we have concluded that the sentence for ninety-nine years is valid does not involve our case of Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900 [1955]. That case had to do with the power of this Court to enter the correct judgment in a criminal case, without a remand. This case involves the validity of the Governor's commutation, and its effect.

However, the principles settled by Corlew case could be used to reach the same conclusion. In that opinion the Court said:

"Assessment by the jury of the punishment upon conviction is not a right re-

served to the jury by the Constitution. 'The right to have the jury assess the punishment was not a part of the right of trial by jury at common law.' Woods v. State, 130 Tenn., 100, at page 107, 169 S.W., 558, at page 559, L.R.A.1915F, 531 citing Durham v. State, 89 Tenn., 723, 18 S.W., 74, and cases from other jurisdictions.

\*    \*    \*    \*    \*    \*

"It may be added that such practice (that of the Supreme Court fixing a reduced penalty when required to do so by the record before it or by law) is well established in civil cases, both in the trial Courts and in this Court, Branch v. Bass, 37 Tenn., 366; Railroad Co. v. Roberts, 113 Tenn., 488, 82 S.W., 314, 67 L.R.A., 495; and the power of the appellate courts to modify and reduce imprisonment in criminal cases, and 'render such judgment on the record as the law demands,' Code, Sec. 11810 is quite generally recognized and exercised. See Annotations, 29 A.L.R., 318, and 34 A.L.R., 1477, 1486, 1487."

While this Court did not apply these principles to the fullest extent it might have applied them in the *Corlew* case, choosing instead to reduce the penalty from a maximum sentence of three years for grand larceny to the minimum sentence of one year for petit larceny, it might have done otherwise.

Under these principles from the *Corlew* opinion it is conceivably within the power of this Court to reduce the death penalty to ninety-nine years, where a defendant is clearly and beyond a reasonable doubt guilty of a first degree murder which justifies the death penalty, which would be applied except for the unconstitutionality of the death part of the sentence. However, in this approach, we would have to take into account Section 40-3506, T.C.A., which provides that the Governor may commute a death sentence upon the certificate of the Supreme Court.

**378**

We notice with approval the language of the Court of Criminal Appeals of the State of Texas in the case of Whan v. State, Tex.Cr.App., 485 S.W.2d 275 [1972].

"In light of the Governor's commutation, we conclude that the proper course to follow is to again affirm the judgment of the trial court. The imposition of the death penalty is no longer possible by virtue of the commutation. However, a commutation does not affect the judgment, but merely mitigates the punishment which can be given. See Young v. Young, 61 Tex. 191 (1884). That being the case, no change in the original judgment is necessary. The Supreme Court reversed our affirmance only in regard to the death penalty. The Governor's commutation has rendered the death penalty portion of the trial court's judgment and subsequent sentence a nullity. Therefore, the proper course for this Court to follow is to again affirm the judgment of the trial court. By so doing, the order of the Supreme Court is satisfied."

The petitioner's punishment, as reduced by the Governor's action, is constitutionally permissible and was lawfully imposed; since it is a reduction from the punishment fixed by the jury, the petitioner cannot be heard to complain.

The law of the *Furman, Jackson* and *Branch* cases, supra, should not be applied retroactively except to the extent necessary to prevent the execution of death sentences. In this case the judgment having been modified by the Governor's commutation no retroactive application is required.

We affirm the judgment of the Criminal Court as commuted to imprisonment for a term of ninety-nine years.

DYER, C. J., CHATTIN, J., and JENKINS, Special Judge, concur.