Thomas Lee BEAN, Petitioner,

v.

STATE OF NEVADA and Edwin T. Pogue, Warden, Nevada State Prison, Respondents.

Civ. No. R–74–150 BRT.

United States District Court, D. Nevada.

Oct. 18, 1974.

Jerry Collier Lane, Carson City, Nev., for petitioner.

Robert List, Atty. Gen., Carson City, Nev., for respondents.

**964**

ORDER

BRUCE R. THOMPSON, District Judge.

Thomas Lee Bean has petitioned this Court for a writ of habeas corpus. An adequate pauper's oath was previously submitted and leave to proceed in forma pauperis granted. Petitioner's prior petition to this Court for a writ of habeas corpus was dismissed pursuant to 28 U.S.C. § 1915(d) in an order dated November 27, 1973. This petition is now before the Court because the appeal to the United States Court of Appeals for the Ninth Circuit from this Court's dismissal of a petition raising issues essentially identical to those presented by the petition herein, *Mears v. State*, Civil No. R02927, was prematurely terminated by the death of James Mears.

In 1963, a jury found Petitioner guilty of first degree murder and imposed the death sentence pursuant to N.R.S. 200.-030(3), which reads in pertinent part as follows:

"If the jury shall find the defendant guilty of murder in the first degree, then the jury by its verdict shall fix the penalty at death or imprisonment in the state prison with or without possibility of parole * * *."

Petitioner's conviction was affirmed on appeal to the Nevada Supreme Court in *Bean v. State*, 81 Nev. 25, 398 P.2d 251 (1965). Subsequently, following the decision of the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), Petitioner, under Nevada's post-conviction remedy statute, N.R.S. 177.375, asserted certain constitutional rights that had not been otherwise reviewed, and the Nevada Supreme Court held that the jury selection at Petitioner's trial had been prejudicially defective under the *Witherspoon* requirement and reversed and ordered a new trial before a jury to redetermine solely the issue of penalty. *Bean v. State*, 86 Nev. 80, 465 P.2d 133 (1970). Subsequent to the penalty hearing at which Petitioner was once again sentenced to death, the United States Su-

preme Court decided *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding that statutes such as N.R.S. 200.030, permitting discriminatory or arbitrary imposition of the death penalty, were violative of the Eighth Amendment. Pursuant to the mandate of *Furman*, the Nevada Board of Pardons, on December 12, 1972, commuted Petitioner's sentence from death to life in prison without possibility of parole. Petitioner then petitioned the Nevada Supreme Court for a writ of mandate quashing the aforementioned action of the Nevada State Board of Pardons and ordering the matter to the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, for a penalty hearing to determine punishment. The Nevada Supreme Court denied Petitioner's petition for a writ of mandate.

It is Petitioner's basic position that *Furman* vacated his death sentence, leaving no sentence for the Nevada State Board of Pardons to commute, with the concomitant effect of remanding the cause for further proceedings. Petitioner also contends that the commutation was without effect because the composition of the Nevada State Board of Pardons violates the constitutional doctrine of separation of powers, and the commutation procedure constitutes a deprivation of due process of law in violation of Petitioner's Fifth and Fourteenth Amendment rights. There is some support for Petitioner's position:

"The sentence of death having been vacated by a court having jurisdiction to do so, and no other sentence having been imposed, it would seem necessarily to follow that there is no sentence presently in effect. The commutation power of the Governor * * * is the power *to reduce* a sentence then in effect, *not* the power to impose a sentence upon a person not then under sentence." *State v. Hill*, 279 N.C. 371, 183 S.E.2d 97, 102 (1971), from the dissenting opinion of Justice Lake. (Emphasis added.)

Commutation is not, therefore, a tool for resentencing prisoners whose sentences have been vacated. Commutation is, rather, an act of mercy appropriate for reducing existing sentences. If *Furman*, from the moment of its decision, vacated Petitioner's death sentence, the Board of Pardons' commutation was ineffective. If, however, *Furman* had more limited effect and Petitioner's death sentence, though arguably unconstitutional, stood on the record until appropriate state action corrected it, then the commutation was valid.

The language of the *Furman* per curiam opinion is of some help in assessing the effect of the decision. The Court identified the three specific cases before it and held:

> " * * * the imposition and carrying out of the death penalty *in these cases* constitutes cruel and unusual punishment * * *. The judgment in each case is therefore reversed insofar as it leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings." *Furman, supra*, 408 U.S. at 239–240, 92 S.Ct. at 2727, 33 L.Ed.2d at 350. (Emphasis added.)

The Court, therefore, limited its opinion to the three specific cases before it. In applying *Furman* to the more than one hundred death penalty cases then seeking certiorari, the Supreme Court felt constrained to independently grant certiorari and vacate the death sentence in each on a case by case basis. See *Stewart v. Massachusetts*, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972), and the cases reported at 408 U.S. 933–940. If *Furman* had automatically vacated all unconstitutional death sentences, the Court would not have had to vacate each of these additional death sentences individually again.

One reason why *Furman* itself did not vacate all outstanding death sentences was undoubtedly because *Furman* did not hold the death penalty unconstitutional per se. See Chief Justice Burger's dissent, *Furman, supra*, 408 U.S. at 396, 92 S.Ct. at 2807, 33 L.Ed.2d at 439–40. *Furman* only held the death penalty unconstitutional where the sentencing body had unfettered discretion to choose between the death penalty and lesser sentences, resulting in its imposition "sparsely, selectively, and spottily to unpopular groups." See the concurring opinion of Justice Douglas, *Furman, supra*, at 256, 92 S.Ct. at 2735, 33 L.Ed.2d at 359. It is at least arguable that the effect of this holding was to leave intact those death sentences not then before the Court on certiorari so that the state courts subsequently acquiring jurisdiction to review those sentences might determine whether they were imposed pursuant to the discretionary death penalty statutes struck down by *Furman*. This was indeed the position uniformly adopted by the state courts.[1]

1. Of the states faced with consideration of death penalties not specifically vacated in *Furman* and subsequent United States Supreme Court decisions, the following state supreme courts felt compelled to vacate or reverse the individual prisoner's death penalty prior to resentencing procedures: Alabama: *Hubbard v. State*, 290 Ala. 118, 274 So.2d 298 (1973); Arizona: *State v. Endreson*, 109 Ariz. 117, 506 P.2d 248 (1973); Arkansas: *Graham v. State*, 253 Ark. 462, 486 S.W.2d 678 (1972); Florida: *Anderson v. State*, Fla., 267 So.2d 8 (1972); Illinois: *People v. Speck*, 52 Ill.2d 284, 287 N.E.2d 699 (1972); Kentucky: *Caine v. Commonwealth*, 491 S.W.2d 824 (1973); Maryland: *Bartholomey v. State*, 267 Md. 175, 297 A.2d 696 (1972); Mississippi: *Myers v. State*, Miss., 268 So.2d 353 (1972); Missouri: *State v. Cobb*, Mo., 484 S.W.2d 196 (1972); Ohio: *State v. Leigh*, 31 Ohio St.2d 97, 285 N.E.2d 333 (1972); Oklahoma: *Pate v. State*, 507 P.2d 915 (Okl. Cr.1973); Pennsylvania: *Commonwealth v. Ross*, 449 Pa. 103, 296 A.2d 629 (1972); South Carolina: *State v. Gibson*, 259 S.C. 459, 192 S.E.2d 720 (1972); Virginia: *Huggins v. Commonwealth*, 213 Va. 327, 191 S.E.2d 734 (1972); and Washington: *State v. Baker*, 81 Wash.2d 281, 501 P.2d 284 (1972).

Additionally, the following state supreme courts remanded to the sentencing courts with the instructions to vacate or modify the death penalty and resentence: California: *People v. Morse*, 8 Cal.3d 811, 106 Cal.Rptr. 177, 505 P.2d 1017 (1973); Connecticut: *State v. Pastet*, 298 A.2d 784, 164 Conn. 669 (1972); Georgia: *Mitchell v. Smith*, 229 Ga. 781, 194 S.E.2d 414 (1972); Louisiana: *State v. Washington*, La., 278 So.2d 484 (1973); Massachu-

■ It is therefore apparent that Petitioner's death sentence continued in effect after *Furman*, pending review pursuant to that decision. The Nevada Supreme Court indicated that such review could be obtained by petitioning the sentencing court for a writ of habeas corpus. *Walker v. State*, 88 Nev. 539, 501 P.2d 651 (1972). Before Petitioner availed himself of this procedure, however, the Nevada Board of Pardons commuted Petitioner's sentence from death to life in prison without possibility of parole. This procedure was upheld on the state level in *Bean, supra*, and similar procedures have been followed and approved in Tennessee (see *Bowen v. State*, Tenn., 488 S.W.2d 373 (1972), and Texas (see *Tezeno v. State*, Tex.Cr.App., 484 S.W.2d 374, 385 (1973), and *Whan v. State*, Tex.Cr.App., 485 S.W.2d 275 (1973).[2] Because Petitioner's sentence continued in force despite *Furman*, it was the proper subject for reduction by commutation.

■ Petitioner also challenges the commutation because it was awarded by the Board of Pardons which is composed of the Governor, Attorney General and Justices of the Supreme Court (N.R.S. 213.010), thereby allegedly violating the constitutional doctrine of separation of powers. The doctrine is not expressly enunciated in the Constitution. It is, rather, a doctrine inferred from the organizing principles underlying the Constitution itself. *Springer v. Philippine Islands*, 277 U.S. 189, 201, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1927). This doctrine has not been extended to the states under the Fourteenth Amendment. *Hughes v. Superior Court*, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1949). The composition of the Nevada Board of Pardons is not, therefore, subject to challenge under the federal doctrine of separation of powers. The constitutionality of the Board's composition under the separation of powers provision of the Nevada State Constitution, Art. 3, sec. 1, is not a question cognizable in a federal habeas corpus proceeding.

■ Finally, Petitioner challenges the commutation procedure as a deprivation of due process of law in violation of his Fourteenth Amendment rights. Commutation, like parole, is not a right secured to a prisoner by the Constitution. *Green v. Teets*, 244 F.2d 401, 403 (9 Cir. 1957). Commutation of a prisoner's sentence from death to life without possibility of parole is not subject to challenge under either the Fourteenth or the Eighth Amendments. *Id.* Nor is it a violation of a prisoner's rights to commute his sentence to a lesser penalty without his consent. *Bowen, supra*, 488 S.W.2d at 376, and *Whan, supra*, 485 S.W.2d at 279.

The illegal part of Petitioner's sentence has been removed by a procedure authorized by state law and in accordance with the United States Constitution. Accordingly, *IT HEREBY IS ORDERED*:

1. The Petition shall be filed in forma pauperis.

2. The petition is hereby denied.

---

setts: *Commonwealth v. LeBlanc*, Mass., 299 N.E.2d 719 (1973); New Hampshire: *State v. Martineau, et al.*, 112 N.H. 278, 293 A.2d 766 (1972); New York: *People v. Fitzpatrick*, (Court of Appeals of New York), 32 N.Y.2d 499, 346 N.Y.S.2d 793, 300 N.E.2d 139 (1973) and North Carolina: *State v. Carroll*, 282 N.C. 326, 193 S.E.2d 85 (1972).

Additionally, the Kansas Supreme Court, in *State v. Randol*, 212 Kan. 461, 513 P.2d 248 (1973), held invalidation of death penalty provision did not render invalid the underlying conviction.

Additionally, the following state supreme courts held that as a result of the Governor's commutation of punishment from death to 99 years and life imprisonment, respectively, the trial court judgment would be reformed to show said punishment: Tennessee: *Briggs v. State*, Tenn.Cr.App., 501 S.W.2d 831 (1972); Texas: *Cherry v. State*, Tex.Cr.App., 488 S.W.2d 744 (1972).

2. The question of the constitutionality of giving effect to *Furman* by commutation has been raised in only one other federal court at this time, but the petitioner's failure to exhaust state remedies prevented that court from reaching the merits. *Payton v. Vance*, 347 F.Supp. 594, 596 (S.D.Tex.1972).