Docket No. 95663–Agenda 19–September 2003.

THE PEOPLE 
ex rel
. LISA MADIGAN, Attorney General of Illinois
, et al.
, Petitioners, v. DONALD N. SNYDER, JR., Director of Corrections, 
et al.
, Respondents.

Opinion filed January 23, 2004.

JUSTICE THOMAS delivered the opinion of the court:

This case comes before the court as an original action for a writ of 
mandamus
. 188 Ill. 2d R. 381. The Illinois Attorney General filed the complaint on behalf of the people of the state of Illinois. The complaint seeks a writ of 
mandamus
 ordering the Director of Corrections and the wardens of Pontiac and Menard Correctional Centers to prevent the recording of certain commutation orders entered by former Governor George H. Ryan or, in the alternative, to expunge the commutation orders where they have already been entered.

BACKGROUND

Petitioners’ complaint contains the following allegations. On January 10, 2003, then-Governor George H. Ryan announced that he was granting “blanket clemency” for all inmates who were then, or who had been, sentenced to death. He issued orders commuting the sentences of more than 160 inmates to life imprisonment, a maximum of life imprisonment, or 40 years. Petitioners challenge the validity of the commutations with respect to two distinct groups of inmates.

In count I of the complaint, petitioners allege that the Governor lacked the authority to commute the sentences of inmates who failed to sign or otherwise consent to their clemency petitions. Article V, section 12, of the Illinois Constitution of 1970 provides that:

“The Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefore [
sic
] may be regulated by law.”

Pursuant to this section, the General Assembly has exercised its authority to regulate the process of application for clemency in section 3–3–13 of the Unified Code of Corrections (730 ILCS 5/3–3–13 (West 2002)). That section provides that petitions seeking clemency “shall be in writing and signed by the person under conviction or by a person on his behalf.” 730 ILCS 5/3–3–13(a) (West 2002). A clemency application cannot be commenced on behalf of a person who has been sentenced to death, unless that person has consented. 730 ILCS 5/3–3–13(c) (West 2002). The complaint listed in an appendix a group of inmates who had not authorized the filing of clemency petitions on their behalf. The statute makes an exception for inmates who are mentally or physically incapable of deciding whether to seek clemency (730 ILCS 5/3–3–13(c) (West 2002)), but none of the inmates listed in the appendix had claimed such an infirmity.

Count I alleged that the legislature had regulated the procedure for applying for executive clemency and that the section imposed a clear legal duty on the Governor not to grant a commutation to any inmate who fails to sign or consent to a commutation petition and who is not otherwise excused from doing so. Accordingly, petitioners allege that the orders granting commutations to these inmates are void.

The next three counts of the complaint deal with inmates who were allegedly not under sentence when then-Governor Ryan issued the commutations. In count II, petitioners argue that the Governor lacked the authority to issue commutations to inmates not under sentence. These inmates had been under a sentence of death at one time, but their sentences had been reversed in either direct appeals or in postconviction proceedings and they were awaiting new sentencing hearings. The complaint alleged that then-Governor Ryan had exceeded his authority in issuing a preemptive grant of commutation and had encroached on the judiciary’s sentencing powers. Accordingly, petitioner argued that these commutations were void.

In count III, petitioners argue that the Governor cannot commute sentences to unspecified terms. For most of the inmates referenced in count II of the complaint, the Governor used one of the following two forms of commutation orders:

“Sentence Commuted to Natural Life Imprisonment Without the Possibility of Parole or Mandatory Supervised Relief [
sic
]; or in the alternative, Sentence Commuted to a Sentence Other Than Death for the Crime of Murder, So that the Maximum Sentence that may be Imposed is Natural Life Imprisonment Without the Possibility of Parole or Mandatory Supervised Relief [
sic
].”

“Sentence Commuted to a Sentence Other Than Death for the Crime of Murder, So that the Maximum Sentence that may be Imposed is Natural Life Imprisonment Without the Possibility of Parole or Mandatory Supervised Relief [
sic
].”

Petitioners argue that these are void orders because the Governor cannot commute sentences to unspecified terms.

Count IV alleges that the Governor may not delegate his commutation power. According to the complaint, then-Governor Ryan improperly delegated his commutation powers to the judiciary by commuting sentences of the inmates listed in count II to unspecified terms.

ANALYSIS

Mandamus
 is an extraordinary remedy traditionally used to compel a public official to perform a ministerial duty. 
People ex rel. Ryan v. Roe
, 201 Ill. 2d 552, 555 (2002). Generally, a writ of 
mandamus
 will be awarded only if a plaintiff establishes a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ. 
People ex rel. Waller v. McKoski
, 195 Ill. 2d 393, 398 (2001). There must also be no other adequate remedy. 
Patzner v. Baise
, 133 Ill. 2d 540, 545 (1990). However, even when all of the normal requirements for the writ’s award are not met initially, we may still consider a petition for a writ of 
mandamus
 if it presents a novel issue that is of crucial importance to the administration of justice. 
People v. Latona
, 184 Ill. 2d 260, 277 (1998). If, in purporting to exercise his pardon or commutation power, the Governor issues a void order, 
mandamus
 may be used to require the officers charged with execution of the order to disregard it. 
People ex rel. Smith v. Jenkins
, 325 Ill. 372, 374-75 (1927); 
People ex rel. Fullenwider v. Jenkins
, 322 Ill. 33 (1926).

I. Inmates Who Did Not Sign or Otherwise Consent to Their Petitions

We first consider petitioners’ argument that former Governor Ryan lacked the authority to commute the sentences of inmates who did not sign or otherwise consent to the filing of petitions on their behalf. For each of the inmates listed in the appendix to count I, a petition for executive clemency was filed with former Governor Ryan. However, these inmates had not signed consent forms allowing these petitions to be filed on their behalf.

Petitioners’ argument is straightforward. The Illinois Constitution gives the Governor the authority to “grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper.” Ill. Const. 1970, art. 5, §12. However, the constitution further provides that, “[t]he manner of applying therefore [
sic
] may be regulated by law.” Ill. Const. 1970, art. V, §12. Pursuant to this section, the General Assembly has exercised its authority to regulate the process of application for clemency in section 3–3–13 of the Unified Code of Corrections (730 ILCS 5/3–3–13 (West 2002)). That section provides that petitions seeking clemency “shall be in writing and signed by the person under conviction or by a person on his behalf.” 730 ILCS 5/3–3–13(a) (West 2002). Further, section 3–3–13(c) provides, in part, that:

“Application for executive clemency under this Section may not be commenced on behalf of a person who has been sentenced to death without the written consent of the defendant, unless the defendant, because of a mental or physical condition, is incapable of asserting his or her own claim.” 730 ILCS 5/3–3–13(c) (West 2002).

According to petitioners, this statute limits the Governor’s authority to grant reprieves, pardons, or commutations to those inmates who follow the proper application procedures. We disagree.

By its plain language, article V, section 12, of the constitution merely allows the legislature to regulate the process for 
applying
 for executive clemency. It does not purport to give the legislature the power to regulate the Governor’s authority to 
grant
 clemency. Further, the 1970 Illinois Constitution does not provide that the Governor’s power to grant clemency is subject to the legislature’s regulation of the application process, as did the 1870 constitution. Article V, section 13, of the Constitution of 1870 provided that:

“The Governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses, 
subject to 
such regulations as may be provided by law relative to the manner of applying therefor.” (Emphasis added.) Ill. Const. 1870, art. V, §13.

The notable changes between the two constitutions were the addition of the phrase “on such terms as he thinks proper” and the deletion of the “subject to” language. Although petitioners might have had at least a plausible argument under the 1870 constitution (see
 People ex rel. Smith
, 325 Ill. at 375 (“The only restriction imposed by the constitution on the power of the Governor to grant reprieves, commutations and pardons is that it shall be ‘subject to such regulations as may be provided by law of applying therefor’ ”)), their contention must fail under the current constitution, which allows the legislature to regulate the application process but does not in any way restrict the Governor’s power to act. If petitioners’ position were correct, it would mean that the legislature could nullify the Governor’s clemency power through legislation, simply by enacting regulations sufficiently strict to prevent any clemency petition from ever reaching the Governor. We do not believe that was the intent of the framers of the constitution.

Further, even if we assume, 
arguendo
, that the legislature could restrict the Governor’s commutation powers through its power to regulate the application process, the legislature did not do so. Indeed, the legislature went out of its way to ensure that no one would read its regulation of the application process as limiting the Governor’s power to act. After setting forth the procedures for the filing and consideration of clemency petitions, the statute expressly provides that:

“Nothing in this Section shall be construed to limit the power of the Governor under the constitution to grant a reprieve, commutation of sentence, or pardon.” 730 ILCS 5/3–3–13(e) (West 2002).

Petitioners contend that the relevant phrase in this section is “under the constitution.” The constitution allows the legislature to regulate the application process so, according to petitioners, subsection (e) means that nothing in this section limits the Governor’s power to act if this section is followed. Petitioners argue that the statute would be rendered meaningless if the Governor could grant clemency even when proper procedures were not followed. This analysis is problematic for several reasons.

First, as explained above, the Governor’s power under the constitution is defined by the first sentence of article V, section 12. The second sentence, allowing the legislature to regulate the application process, is not a limitation on the Governor’s power. Next, subsection (e) has no meaning except as an explanation that the statute should not be construed as a limitation on the Governor’s power. If petitioners’ argument were correct, section 3–3–13 would indeed be a limitation on the Governor’s power–a limitation petitioners claim the legislature is entitled to enact–and subsection (e) would then have no purpose. Finally, it is simply untrue that subsection (e) renders the entire section superfluous. If an inmate fails to follow the proper procedures, then the Governor does not have to consider the petition. The Prisoner Review Board does not have to accept it, does not have to schedule a hearing, and does not have to make a recommendation to the Governor.

Thus, in the typical case, an inmate who does not follow proper procedures will not get his petition before the Governor. The failure of the inmates listed in count I to consent to their petitions would have given then-Governor Ryan a basis to refuse to consider the petitions on their merits. This, however, was not the typical case. We take judicial notice of then-Governor Ryan’s public statements in issuing these commutations (See Governor George Ryan, Address at Northwestern University Law School (January 11, 2003)), and it is apparent that he intended to grant blanket clemency because he believed that Illinois’ death penalty system was broken. Thus, in this instance, the failure of certain inmates to consent to their petitions was irrelevant to the Governor. That does not mean, however, that section 3–3–13 does not play an important role in the clemency process. Petitioners have not shown a clear right to relief on count I of their complaint, and we deny the request for a writ of 
mandamus
.

II. Unsentenced Inmates

We next address the validity of former Governor Ryan’s orders commuting the sentences of inmates not currently under sentence. As stated above, the inmates listed in this count of the petition had obtained sentencing relief as part of appellate or collateral proceedings and were awaiting new sentencing hearings when former Governor Ryan purported to commute their death sentences.

Before proceeding with the merits of this discussion, we address a motion that we ordered taken with the case. Respondents William Bracy and Roger Collins moved this court to dismiss them from count II. Bracy and Collins argue that they were not “unsentenced” when then-Governor Ryan commuted their sentences, and thus they should be dismissed from count II. Bracy and Collins had obtained relief in federal 
habeas corpus
 proceedings. The Seventh Circuit upheld a district court opinion giving the Illinois courts 90 days to hold new sentencing hearings. 
Bracy v. Schomig
, 286 F.3d 406 (7th Cir. 2002). Bracy and Collins argue that their death sentences remained intact at this point because federal courts acting under 28 U.S.C. §2254 do not issue decrees that directly affect the judgments entered in state courts. Rather, a federal court issuing a writ of 
habeas corpus 
essentially requires the State to retry or resentence the defendant, on pain of ordering the defendant’s release if the State does not comply.

We agree with Bracy and Collins that they remained under sentence. A federal court considering a state prisoner’s petition for a writ of 
habeas corpus 
does not have the authority to revise a state court judgment. As the United States Supreme Court explained in 
Fay v. Noia
, 372 U.S. 391, 430-31, 9 L. Ed. 2d 837, 864, 83 S. Ct. 822, 844 (1963), 
overruled in part on other grounds by Wainwright v. Sykes
, 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977):

“Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner.”

See also, 
e.g.
, 
Wilson v. Lawrence County
, 154 F.3d 757, 761 (1998) (“[a] federal writ of habeas corpus does not reverse or void the state judgment of conviction”); 
Henderson v. Frank
, 155 F.3d 159, 168 (3d Cir. 1998) (federal court in habeas proceeding has no authority to revise the state court judgment; court may determine only whether there is an improper detention and, if so, order the release of the prisoner conditioned on the State’s opportunity to correct errors); 39A C.J.S. 
Habeas Corpus 
§372 (2003).

Petitioners respond that the federal court did in fact vacate the sentences, citing to the opinion in 
United States ex rel. Collins v. Welborn
, 79 F. Supp. 2d 898 (N.D. Ill. 1999). Further, petitioners contend that, once the Supreme Court denied 
certiorari
 in the case, Bracy and Collins could not be said to be under a sentence of death. As set forth above, however, the federal court had no authority to revise the judgments of the Illinois courts in these cases. Thus, although the district court used the term “vacate,” its order could not vacate these sentences. We also deem the denial of 
certiorari
 by the Supreme Court to be irrelevant. Because the federal court had no authority to revise the judgment, that judgment remained intact, even if it could never be enforced. Thus, we agree with Bracy and Collins that their state court judgment of conviction and sentence was still intact when then-Governor Ryan issued his clemency orders. The motion to dismiss is granted.

We now turn to the merits of petitioners’ argument. Petitioners focus on the phrase “after conviction” in article V, section 12, of the Illinois Constitution. The constitution gives the Governor the power to grant “reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper.” According to petitioners, the term “conviction” sometimes refers to an adjudication of guilt and sometimes refers to both an adjudication of guilt and the imposition of a sentence, depending on the context in which it is used. 
People v. Woods
, 193 Ill. 2d 483, 487 (2000). Petitioners contend that the use in article V, section 12, of the term “conviction” means a finding of guilt plus a sentence. In their reply brief, however, petitioners concede that with respect to the Governor’s 
pardoning
 power, article V, section 12, allows the Governor to act following an adjudication of guilt. Petitioners argue that the single term “conviction” in this section means two different things:

“Accordingly, in the context of the Governor’s pardon power, the term ‘after conviction’ means after a guilty verdict, regardless of whether there is a sentence. By contrast, in the commutation power, the term ‘conviction’ must include an existing sentence.”

We cannot agree with petitioners that “conviction” means two different things in article V, section 12. Rather, we believe that the framers intended the word to have its commonly understood meaning, which is an adjudication of guilt. See Webster’s Third New International Dictionary 499 (1993) (“the act of proving, finding, or adjudging a person guilty of an offense or crime”). Throughout the Illinois Constitution, the term “conviction” is used separately from “sentence” or other terms relating to the consequences of an adjudication of guilt. See, 
e.g.
, Ill. Const. 1970, art. I, §8.1(a)(5) (crime victims shall have the right to “information about the conviction, sentence, imprisonment, and release of the accused”); §9 (“[a]ll persons shall be bailable *** except for *** offenses for which a sentence of life imprisonment may be imposed as a consequence of conviction”); §11 (refers to “Limitation of Penalties after Conviction” and provides that “no conviction shall work corruption of blood or forfeiture of estate”).

In certain instances, we have construed the term “conviction” to be a legal term of art meaning a finding of guilt and a sentence. For instance, in 
Woods
, 193 Ill. 2d at 488-89, we held that the term “date of conviction” in section 122–1(c) of the Post-Conviction Hearing Act (725 ILCS 5/122–1(c) (West 2002) (setting forth time limits in which a post-conviction petition must be filed)) means the date that the final judgment, including the sentence, was entered. We reached this conclusion by considering both (1) how the terms “conviction” and “judgment” were defined in the Code of Criminal Procedure, and (2) the purposes underlying the Post-Conviction Hearing Act (to provide a remedy for constitutional violations that occur at trial or sentencing).

By contrast, nothing in the language of the constitution leads us to believe that the framers meant to use a legal term of art rather than the commonly understood meaning of the term: an adjudication of guilt. We read article V, section 12, as meaning simply that the Governor may first exercise his clemency powers after a defendant is found guilty of an offense. This court stated as much in 
People ex rel. Smith v. Allen
, 155 Ill. 61 (1895), albeit in 
dicta
. In that case, the defendant pleaded guilty to conspiracy, but the trial court stayed judgment on the plea, allowed the defendant to leave, and never imposed sentence. This court held that an indefinite suspension of sentence in this manner was essentially a 
quasi
 pardon and only the governor had the authority to issue pardons:

“Our constitution confers the pardoning power upon the executive branch of the State government, and the Governor alone can 
prevent the infliction of punishment after a legal conviction
.” (Emphasis added.) 
Allen
, 155 Ill. at 64.

 The majority of state courts have reached the same conclusion in interpreting the phrase “after conviction” in the clemency provisions of their state constitutions. See, 
e.g.
, 
State v. Mondragon
, 107 N.M. 421, 424, 759 P.2d 1003, 1006 (App. 1988);
 Whan v. State
, 485 S.W.2d 275, 276-77 (Tex. Crim. App. 1972); 
In re Anderson
, 34 Cal. App. 2d 48, 51-54, 92 P.2d 1020, 1022-23 (1939); 
People v. Marsh
, 125 Mich. 410, 412-15, 84 N.W. 472, 473-74 (1900); 
Parker v. State
, 103 Tenn. 547, 550, 53 S.W. 1092, 1093 (1899); 
State ex rel. Butler v. Moise
, 48 La. Ann. 109, 122-23, 18 So. 943, 949 (1895); 
State v. Alexander
, 76 N.C. 231 (1877); 
Blair v. Virginia
, 66 Va. 850 (1874); 
Commonwealth v. Lockwood
, 109 Mass. 323, 324-40 (1872); but see 
Ex Parte White
, 28 Okla. Crim. 180, 187-88, 230 P. 522, 524 (1924); 
Ex Parte Campion
, 79 Neb. 364, 372, 112 N.W. 585, 588 (1907).

Nevertheless, holding that the Governor may first exercise his clemency powers after a defendant is adjudicated guilty does not end our inquiry. We believe that the relevant inquiry is not so much what the phrase “after conviction” means as whether it is within the Governor’s clemency powers to do what former Governor Ryan did here. In other words, does lowering the maximum possible sentence that a defendant can receive fall within the power given the Governor to “grant reprieves, commutations and pardons *** for all offenses on such terms as he thinks proper”? We believe that it does.

The pardon power given the Governor in article V, section 12, is extremely broad. The Governor may grant reprieves, pardons, and commutations “on such terms as he thinks proper.” Even before the “on such terms as he thinks proper” language was added to the constitution, this court had recognized that the Governor’s clemency powers granted by the constitution “cannot be controlled by either the courts or the legislature. His acts in the exercise of the power can be controlled only by his conscience and his sense of public duty.” 
People ex rel. Smith
, 325 Ill. at 374.

A pardon is “[a]n executive action that mitigates or sets aside punishment for a crime.” Black’s Law Dictionary 1113 (6th ed. 1990). Further, there are several different types of pardons:

“[A] pardon may be full or partial, absolute or conditional. A pardon is full when it freely and unconditionally absolves the person from all the legal consequences of a crime and of the person’s conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided; it is partial where it remits only a portion of the punishment or absolves from only a portion of the legal consequences of the crime. A pardon is absolute where it frees the criminal without any condition whatsoever; and it is conditional where it does not become operative until the grantee has performed some specified act, or where it becomes void when some specified event transpires.” 67A C.J.S. 
Pardon & Parole 
§2, at 6 (2002).

A commutation is the change of punishment to which a person has been condemned to a less severe one. 
People ex rel. Smith
, 325 Ill. at 376. It removes a judicially imposed sentence and replaces it with a lesser, executively imposed sentence.
 People v. Rissley
, 206 Ill. 2d 403, 463 (2003). Finally, a reprieve is “the postponement of the execution of a sentence.” 67A C.J.S. 
Pardon & Parole
 §3 (2002). The power to grant reprieves and commutations is generally viewed as a subset of the Governor’s pardoning power. See, 
e.g.
, 
State ex rel. Forbes v. Caperton
, 198 W. Va. 474, 478, 481 S.E.2d 780, 784 (1996) (“Although a commutation is not synonymous with a pardon, it is well established throughout the United States today that the power to pardon generally encompasses the lesser power to commute”); 
Ricks v. State
, 882 S.W.2d 387, 391 (Tenn. Crim. App. 1994) (“[t]he power to commute a sentence is a part of the pardoning power and may be exercised under a general grant of that power”); 
Whittington v. Stevens
, 221 Miss. 598, 604, 73 So. 2d 137, 140 (1954) (“it is generally held that the general power to pardon necessarily contains in it the lesser power of remission and commutation”);
 State v. Hildebrand
, 25 N.J. Super. 82, 84, 95 A.2d 488, 489 (1953) (“This constitutional grant of the pardoning power carried with it the lesser powers of granting remission of part of the penalty, of granting commutation of sentence, and of granting a limited or partial pardon, although none of these lesser powers is specifically mentioned”).

The only restriction this court has heretofore found on the Governor’s clemency power is that he may not change a conviction for one crime into a conviction for another. Thus, in 
People ex rel. Fullenwider
, 322 Ill. at 36-40, this court held invalid a commutation order that purported to commute a life sentence to “manslaughter.” The defendant had been convicted of murder, and the Governor’s clemency power did not allow him to change the nature of defendant’s conviction.

There is a dearth of authority on the issue of whether a Governor can issue a “commutation” when a defendant is not currently under sentence, but the two states to address the issue have held this to be a valid exercise of the Governor’s clemency power. See 
Collins v. State
, 550 S.W.2d 643, 650 (Tenn. 1977); 
Whan v. State
, 485 S.W.2d 275, 277 (Tex. Crim. App. 1972). However, these cases contain little analysis and drew forceful dissents, arguing that a commutation can only be issued if a sentence is in place. See 
Collins
, 550 S.W.2d at 654-57 (Brock, J., dissenting, joined by Cooper, C.J.); 
Whan
, 485 S.W.2d at 277-81 (Onion, J., dissenting). In a somewhat analogous case, the Court of Appeals of New Mexico held that the governor’s 
pardon
 power allowed him to pardon a habitual offender sentence. The power attached after conviction, but before sentencing. 
State v. Mondragon
, 107 N.M. 421, 424, 759 P.2d 1003, 1006 (1988). The 
Mondragon
 court explained that:

“It is well established that, by exercise of the power to pardon, the governor can exempt an individual from the punishment that the law imposes as a result of conviction for commission of a crime. [Citation.] A sentence enhancement, though imposed on the basis of a defendant’s status as an habitual offender, is nonetheless punishment for commission of the crime to which the enhanced sentence attaches. [Citation.] Thus, the power to pardon an individual from punishment for commission of a crime includes the power to preclude any punishment that might be imposed, upon conviction of that crime, as a result of an individual’s status as an habitual offender.” 
Mondragon
, 107 N.M. at 423, 759 P.2d at 1005.

This is a difficult question with little to guide us, but we believe that the grant of authority given the Governor under article V, section 12, is sufficiently broad to allow former Governor Ryan to do what he did. As set forth above, the Governor’s clemency powers, which attach upon an adjudication of guilt, allow him to mitigate or set aside the punishment for the crime by issuing a pardon. Pardons may be full or partial, removing some or all of the legal consequences of a crime, and may be absolute or imposed with conditions. Further, the Governor can grant a reprieve for any sentence imposed and may commute any sentence imposed to a lesser sentence. In this situation, what former Governor Ryan essentially did was to grant the inmates listed in count II a partial pardon by pardoning only the possible capital consequences of the offense. As we noted, a partial pardon exonerates a defendant from some but not all of the punishment or legal consequences of a crime. Black’s Law Dictionary 1113 (6th ed. 1990); 
Anderson v. Commonwealth
, 107 S.W.3d 193, 196 (Ky. 2003) (construing power of the governor to issue “pardons” under state constitution as including power to issue partial pardons). The Governor’s pardon power allows him to remove or mitigate the consequences of a crime, and that is what he did here by removing the maximum sentence for these defendants in future sentencing hearings. We deem it irrelevant that the Governor used the term “commutation” in his clemency orders, because we believe that it is the substance, not the terminology, of the clemency orders that controls. See 
Ex parte Black
, 123 Tex. Crim. 472, 474, 59 S.W.2d 828, 829 (1933) (construing governor’s clemency order to be a “reprieve” even though governor used the word “furlough”; “it is the substance of the proclamation of the governor and not the name by which it is designated, that controls its effect”). We emphasize the limited nature of our holding. We hold only that the Governor’s constitutional authority to issue pardons after conviction is sufficiently broad to allow him to reduce the maximum sentence the defendant is facing. In such a situation, the Governor is exercising his power to prevent or mitigate punishment by pardoning the defendant from the full extent of the punishment allowed by law.

With respect to two of the inmates listed in the exhibit to count II, Gregory Madej and Renaldo Hudson, former Governor Ryan commuted their sentences to specific terms of life imprisonment rather than to maximum terms. However, we believe that these two inmates remained under a sentence of death and thus a commutation to a specific term was appropriate. Gregory Madej had been granted relief in a federal 
habeas corpus 
proceeding. Thus, for the reasons stated in granting the motion filed by inmates Bracy and Collins, Madej had an existing sentence of death that was subject to commutation.

Renaldo Hudson had his sentence vacated by the circuit court in a postconviction proceeding. The court denied relief as to Hudson’s conviction, but ordered a new sentencing hearing. The State appealed, and this court remanded the cause to the circuit court for an evidentiary hearing on a jury-selection issue. However, we retained jurisdiction of the cause and ordered the circuit court to file a decision within 90 days. 
People v. Hudson
, 195 Ill. 2d 117, 138 (2001). The circuit court decided the issue adversely to Hudson, and this court ordered additional briefing on the issue. After defendant and the State had each filed an additional brief, and while the cause was still pending before this court, former Governor Ryan issued the commutation orders. Thus, the issue of whether Hudson was entitled to a new sentencing hearing had not been finally decided. We agree with Hudson that at the time the commutation orders were entered he was not awaiting a new sentencing hearing. Rather, he was still waiting for a decision from this court as to whether his sentence should be vacated and if he should receive a new sentencing hearing. See 
People v. Brown
, 204 Ill. 2d 422, 425 (2002) (commutation order valid when issued after this court vacated death sentence but while case was still pending on rehearing and mandate had been stayed pending a writ of 
certiorari 
to the United States Supreme Court). Thus, we believe that former Governor Ryan had the authority to commute Hudson’s sentence to life imprisonment.

We next address counts III and IV of the complaint. Petitioners argue that the clemency orders for most of the defendants listed in the exhibit to count II were invalid because they commuted to a maximum term rather than to a specific sentence. Petitioners contend that a commutation replaces a judicially imposed sentence with an executively imposed sentence, and therefore the commutation must be to a specific term. If the sentence is for a maximum term, it leaves resentencing up to the judiciary, and petitioners claim that this is an improper delegation of the commutation power. See 
People ex rel. Brundage v. LaBuy
, 285 Ill. 141, 144 (1918) (power to grant reprieves, pardons, and commutations is vested in the Governor and cannot be vested in another officer or body, directly or indirectly).

These arguments fail because, as we explained above, then-Governor Ryan’s clemency orders were more in the nature of limited pardons than sentencing commutations. The orders pardoned these inmates from the most severe potential consequences of their crimes–capital punishment. Thus, there was no problem with orders that set a maximum term, and the Governor was not delegating any of his clemency powers to the judiciary. These inmates were already going to receive new sentencing hearings ordered by the judiciary. The clemency orders merely removed the most severe possible punishment from consideration at these hearings.

Finally, petitioners claim that then-Governor Ryan’s clemency orders violated separation of powers principles for two reasons. First, petitioners argue that the former Governor usurped the authority of the State’s Attorneys to decide what punishment to seek in these cases. Second, petitioners argue that former Governor Ryan interfered with the judiciary’s sentencing powers.

We perceive no separation of powers problems. First, when the State’s Attorneys perform their roles as prosecutors, they are members of the executive branch of government. 
People ex rel. Daley v. Suria
, 112 Ill. 2d 26, 37 (1986). The separation of powers doctrine applies only to powers assigned to separate branches of government. See Ill. Const. 1970, art. II, §1 (“The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another”). Further, petitioners concede that, following an adjudication of guilt, the Governor can grant a defendant a complete pardon, removing from the State’s Attorneys the ability to seek 
any
 punishment against the individual. Here, the Governor exercised the much lesser power of preventing them from seeking only the maximum penalty provided by law.

Similarly, there is no separation of powers problem between the Governor and the judiciary. As set forth above, following a conviction, the Governor’s constitutional clemency powers allow him to completely or partially absolve a defendant of the consequences of his crime, and to suspend or commute any sentence imposed by the judiciary. Former Governor Ryan did not exercise any powers reserved to the judiciary in entering these orders, but rather exercised the clemency powers granted him by the constitution. We deny petitioners’ request for a writ of 
mandamus
 on counts II, III, and IV.

As a final matter, we note that clemency is the historic remedy employed to prevent a miscarriage of justice where the judicial process has been exhausted. 
Cherrix v. Braxton
, 131 F. Supp. 2d 756, 768 (E.D. Va. 2000). We believe that this is the purpose for which the framers gave the Governor this power in the Illinois Constitution. The grant of this essentially unreviewable power carries with it the responsibility to exercise it in the manner intended. Our hope is that 
Governors will use the clemency power in its intended manner–to prevent miscarriages of justice in individual cases.

For all of the above reasons, the petition for a writ of 
mandamus
 is denied.

Writ denied
.