MANSFIELD, Justice
(concurring specially).
The court decides this case on the ground that a mandatory life sentence where the defendant will not be eligible for parole until he has served sixty years in prison is the practical equivalent of mandatory life without parole (LWOP) and thus violates Miller v. Alabama, 567 U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). I agree with that conclusion and therefore join the court’s opinion. I write separately to respond to the observations in Justice Wiggins’s special concurrence regarding the Governor’s commutation authority.
First, I do not believe the Governor lacked authority to commute Ragland’s sentence after Miller had been decided. We have never said that the Governor’s article IV, section 16 power to grant commutations goes away when a sentence is subject to legal challenge based on a United States Supreme Court decision. Section 16 states the Governor “shall have power to grant reprieves, commutations and pardons, after conviction.” If anything, this means that the Governor can commute a sentence at any time, so long as it is “after conviction.”
When the Governor issued his order of commutation, Ragland’s LWOP sentence was still in place. No judgment had set it aside. Ragland could not have taken a copy of Miller, showed it to the warden, and walked out of Anamosa State Penitentiary. Miller was not self-executing, and as the court observes, it was an open question whether Miller was retroactive and applied to cases like Ragland’s or not. I happen to agree with the court that it was, *124 but this is one matter that needed to be addressed before Ragland’s LWOP sentence would be invalidated.
Also, I do not believe the Governor’s reasons for granting commutation are subject to judicial scrutiny. From the perspective of the courts, it matters not whether the Governor’s motivation was to preserve the legislature’s previous sentencing scheme as much as possible, or to show leniency toward Ragland.
Section 16 makes this clear. It provides that the Governor “shall report to the general assembly ... each case of reprieve, commutation, or pardon granted, and the reasons therefor.” Iowa Const, art. IV, § 16. By expressly providing that the Governor would provide his reasons to the legislature, this tells me our framers intended that any check on the Governor’s clemency authority would be in the 'political process. Article III, section 16 provides an analogue. It states that when the Governor vetoes legislation, he or she shall return it to the legislature “with his [or her] objections.” Generally speaking, the objections are for political purposes, for the benefit of the legislature, not to enable judicial review. The same is true with the reasons for commutation that are also provided to the legislature under our constitution.
Furthermore, there is precedent for what the Governor did here. In 1972, the United States Supreme Court decided Furman v. Georgia, which invalidated the death penalty as imposed in a number of states. See 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Before certain death row inmates in Nevada, Texas, and Tennessee could receive a resentencing, however, their sentences were commuted to life in prison. Bean v. Nevada, 410 F.Supp. 963, 964 (D.Nev.1974) (upholding the pardon board’s commutation of the petitioner’s sentence from death to LWOP after Furman struck down death-sentence statutes similar to Nevada’s), aff'd, 535 F.2d 542 (9th Cir.1976); Collins v. State, 550 S.W.2d 643, 646, 650 (Tenn.1977) (upholding, on rehearing, the governor’s commutation of the petitioners’ sentences from death to life imprisonment after the state supreme court held the death-sentence statute unconstitutional); Stanley v. State, 490 S.W.2d 828, 830 (Tex.Crim.App.1972) (upholding the governor’s commutation from death to life imprisonment of an inmate’s sentence after his case was remanded by the U.S. Supreme Court along with Furman). Life in prison was less severe than the death penalty but more severe than some other sentencing options that would have been available under a resen-tencing. See Bean, 410 F.Supp. at 964 (noting that the petitioner had originally been sentenced under a statute allowing for imprisonment “with or without the possibility of parole” (internal citation and quotation marks omitted)); Collins v. State, 550 S.W.2d 643, 646 (Tenn.1977) (noting that a jury would resentence on remand “with punishment to be fixed in each case from twenty years to life imprisonment”); Stanley, 490 S.W.2d at 831-32 (Onion, J., dissenting) (noting that the defendant, in a new trial, would have been subject to a “full range of alternative penalties”). Presumably, in all three states, the purpose of the commutation was to come as close as constitutionally possible to the original sentence. In addition, the defendants opposed the commutations. See, e.g., Bean, 410 F.Supp. at 964; Bowen v. State, 488 S.W.2d 373, 377 (Tenn.1972) (“[T]his commutation became effective without the consent of the defendant ... ”).
Still, in all three states, the commutations were upheld. See Bean, 410 F.Supp. at 965; Mears v. Nevada, 367 F.Supp. 84, 86 (D.Nev.1973) (upholding the pardon board’s commutation of the petitioner’s *125 sentence from death to LWOP after Fur-man struck down death-sentence statutes similar to Nevada’s); Collins, 550 S.W.2d at 650; Bowen, 488 S.W.2d 373, 376 (Tenn.1972) (recognizing the governor’s ability to commute the petitioner’s sentence from death to ninety-nine years imprisonment in response to the Furman line of cases); Stanley, 490 S.W.2d at 830; Whan v. State, 485 S.W.2d 275, 277 (Tex.Crim.App.1972) (upholding the Governor’s commutation of the appellant’s sentence from death to life imprisonment, which the governor issued while the case was pending in state court on remand from the United States Supreme Court); see also Hartfield v. Quarterman, 603 F.Supp.2d 943, 950 (S.D.Tex.2009) (stating that the governor may commute a defendant’s sentence while the case is on remand, as long as “there [is] no final judgment by the Court of Criminal Appeals reversing [the] conviction.”); People ex rel. Madigan v. Snyder, 208 Ill.2d 457, 281 Ill.Dec. 581, 804 N.E.2d 546, 558-60 (2004) (upholding the Illinois governor’s authority to commute a death sentence to life regardless of the pendency of a resentencing hearing); People v. Brown, 204 Ill.2d 422, 275 Ill.Dec. 313, 792 N.E.2d 788, 789-90 (2002) (acknowledging the governor’s ability to commute a sentence while the defendant’s case awaited rehearing on appeal because the “defendant remained under an existing sentence”). To my knowledge, no court has held that a Governor lacks authority to commute an inmate’s sentence where that specific sentence has not previously been vacated by a court.
Additionally, I do not see anything in the Governor’s commutation order requiring a waiver of “constitutional, civil, fundamental, or human rights.” In any event, we said earlier this term: “[W]e have held the governor may impose conditions on the defendant in exchange for his clemency as long as the conditions themselves are not illegal, immoral, or impossible to be performed.” Lowery v. State, 822 N.W.2d 739, 741 (Iowa 2012) (stating also that “[i]n Iowa, the governor’s constitutional clemency power may be exercised with broad discretion”). We then cited Arthur v. Craig, which long ago upheld the Governor’s authority to issue a conditional pardon that allowed the inmate to be summarily arrested and reincarcerated, without judicial review, if he violated any of the conditions. See 48 Iowa 264, 267-69 (1878).[8]
Nor am I aware of any legislation that would have limited the Governor’s authority here. Iowa Code section 902.2 provides a procedure by which inmates serving life terms or the director of the department of corrections may apply for commutations, but does not appear to limit the Governor’s authority to grant commutations. See Makowski v. Governor, 299 Mich.App. 166, 829 N.W.2d 291, 296 (2012) (discussing a similar provision in Michigan and concluding that it “in no way limit[s] the Governor’s absolute discretion with regard to commutation decisions”). Likewise, I read section 915.19, requiring the Governor to notify registered victims before he or she grants an application for commutation to an offender convicted of a violent crime, as potentially giving rights to victims, not the offender. See Iowa Code § 915.19(1) (2013). There is no indication that a victim had registered here. Also of note is section 914.1, which provides, “The power of the governor under the Constitution of the State of Iowa to grant a ... commuta *126 tion of sentence ... shall not be impaired.” Id. § 914.1.
One final note. Neither Ragland nor the State claims the district court’s resen-tencing of Ragland to life with eligibility for parole after twenty-five years was improper if the sixty-years-without-parole sentence cannot stand. The district court imposed that sentence because it was the legislature’s post-Graham, v. Florida[9] fix for class “A” felonies committed by juveniles other than first-degree murder. See 2011 Iowa Acts ch. 131, § 147 (codified at Iowa Code § 902.1(2)(a)). For now, I would simply emphasize that we are not approving, or disapproving, this life sentence with a twenty-five-year minimum in other cases affected by Miller. Because no one has challenged the district court’s new sentence for Ragland, it should stand in this case without serving as a precedent elsewhere.
For the foregoing reasons, I join in the court’s opinion but also write separately.
WATERMAN, J., joins this special concurrence.

. See also Lowery, 822 N.W.2d at 742-43 (resolving the question of how a prisoner whose sentence had been commuted would accumulate earned time credit by interpreting the commutation order, rather than deciding the matter through statutory interpretation).

. 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).