People of the State of Illinois ex rel. Merle Symonds, Richard Madal and Raymond Schuda, Plaintiffs-Relators-Appellees, v. James V. Gualano, Defendant-Respondent-Appellant.

Gen. No. 54,232.

First District, Third Division.

May 7, 1970.

209

Geocaris, Sneider and Troy, of Chicago (Richard J. Troy and Ronald N. Dubner, of counsel), for appellant.

Hackbert, Rooks, Pitts, Fullagar and Poust, of Chicago (Paul Noland and John V. Ryan, III, of counsel), for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal from an order, entered pursuant to the mandate of this court, ousting the defendant-respondent from the offices of president and trustee of the Village of Justice, member of the Justice Zoning Board of Appeals and member of the Justice-Willow Springs Water Commission. The issue presented is whether the restoration of the defendant's rights of citizenship, granted by the Governor of Illinois, removed his ineligibility to hold public office created by his prior convictions for an infamous crime.

In 1935 and 1943 the defendant pleaded guilty in the Federal courts to several charges of mail fraud. In 1961 he was elected president of the Village of Justice and was reelected to that office in 1965. After the 1965 election, the plaintiffs-relators, who are residents, voters, taxpayers and trustees of the village, brought a quo warranto action seeking to oust him from the position of president and the other two public positions he then held. They contended that mail fraud was an infamous crime and that his convictions for that offense barred him from holding public office. Article IV, section 4, of the Constitution of Illinois and chapter 38, par 124–2 (a), of the Ill Rev Stats 1965. The defendant argued that mail fraud did not constitute an infamous crime as defined by the Illinois legislature. Ill Rev Stats 1965, c 38, par 124–1. Both sides sought summary judgment and the trial court found for the defendant.

On appeal this court held that a conviction for the use of the mail to defraud was a conviction for an infamous crime under the laws and constitution of our State. People ex rel. Symonds v. Gualano, 97 Ill App2d 248, 240 NE2d 467 (1968). At the conclusion of our opinion we stated:

> "The respondent's last conviction took place a quarter of a century ago, his probation was satisfactorily discharged and, presumptively, his life during the intervening years merited the trust the citizens of the Village of Justice imposed in him. However, the language of the constitution is absolute and makes no provision for a mitigation of its prohibition with the passage of time. The statute provides for the restoration of the rights of citizenship if there is an appropriate pardon. But the respondent has not been pardoned and his rehabilitation, which deserves commendation, does not redound to his favor insofar as the right to hold public office is concerned."

Following the issuance of the opinion, the defendant petitioned the Governor of Illinois for the restoration of his rights. The Governor granted the petition and issued certificates which restored to the defendant "all his rights of citizenship."

In the meantime, the plaintiffs had filed in the trial court a motion for a judgment of ouster in accordance with the mandate of this court. When this motion was called for hearing, the trial court permitted the defendant, over the objection of the plaintiffs, to file an amended and supplemental answer to the original complaint for quo warranto. The amended answer set forth the restoration of the rights of citizenship and the certificates evidencing the restoration were filed as exhibits. The answer prayed that the complaint for quo warranto be dismissed. Both sides submitted memoranda of law to

211

the court after which the order was entered from which this appeal is taken.

The plaintiffs have moved to dismiss the appeal. They assert that the issue is moot since the judgment of ouster was entered on March 10, 1969, and the defendant's successor as village president was elected on April 15, 1969, at the regularly scheduled election, for a four-year term.

■■ The general rule is that where the issues involved in the trial court no longer exist, a court of review will dismiss the appeal. Johnson v. Board of Education of City of Chicago, 79 Ill App2d 22, 223 NE2d 434 (1967). This rule has been applied to appeals involving the right to hold office, if it appears that the term of office has expired. People ex rel. Morris v. Pettow, 243 Ill App 142 (1926). Although the defendant's term of office as mayor expired and his successor has been elected and qualified, the case is not moot. The defendant was removed from office more than a month before his term expired. During that period he did not receive his salary; if the judgment of ouster was erroneously entered he might seek compensation for that period. People v. Bradford, 267 Ill 486, 108 NE 732 (1915); Kreitz v. Behrensmeyer, 149 Ill 496, 36 NE 983 (1894). Furthermore, the judgment also removed the defendant as a member of the Justice-Willow Springs Water Commission; his term ran until 1972. The collateral rights attendant upon his loss of both offices precludes the dismissal of the appeal for reason of mootness.

The substantive issue in the case arises from the apparent inconsistency between two provisions of the Constitution of Illinois, 1870. Article IV, section 4, states:

"No person who has been, or hereafter shall be, convicted of bribery, perjury or other infamous crime . . . shall be eligible . . . to any office of

profit or trust in this state." Constitution of Illinois, 1870, Art IV, § 4.

Article V, section 13, states:

> "The governor shall have the power to grant reprieves, commutations and pardons, after conviction, for all offenses, subject to such regulations as may be provided by law relative to the manner of applying therefor." Constitution of Illinois, 1870, Art V, § 13.

The plaintiffs rely on Article IV, section 4, and the defendant on Article V, section 13. In the prior appeal, the plaintiff also relied on section 124–2 of the Code of Criminal Procedure of 1963. In the present appeal it is the defendant who cites section 124–2 to supplement his reliance on Article V, section 13. The statute, so favored by both parties, is as follows:

> "(a) A person convicted of an infamous crime shall forever thereafter be rendered incapable of holding any office of honor, trust or profit . . . unless he or she is again restored to such rights by the terms of a pardon for the offense or otherwise according to law.

> "(b) Any time after a judgment of conviction is rendered a person convicted of an infamous crime may petition the Governor for a restoration of rights." Ill Rev Stats 1967, c 38, § 124–2.

The plaintiffs maintain that the constitutional mandate of section 4, Article IV, prohibits a person, adjudged guilty of an infamous crime, from ever holding public office. The defendant maintains that section 13, Article V, is of equal stature with section 4, Article IV, and that to construe the latter as placing an absolute bar to a person's ever holding public office would deny efficacy

213

to the constitutional provision which grants pardoning power to the governor.

The parties agree that the issue has not been considered in any reported Illinois case. The issue has been considered, however, by the courts of a few states under varying constitutional and statutory provisions. Without exception, they have held that a pardon or a restoration of rights permits the holding of public office.

A case closely paralleling the present one is State ex rel. Cloud v. Election Board, 169 Okla 363, 36 P2d 20 (1934). The Oklahoma court was faced with a conflict between constitutional provisions similar to the ones in our constitution. Cloud, who had been convicted of a felony and pardoned by the governor, sought to run for the State House of Representatives. The Oklahoma constitution provided: ". . . nor shall any person be eligible to election to the Legislature, who has been adjudged guilty of a felony." Another provision of the constitution vested pardoning power in the governor. The court noted the canon of constitutional construction that every provision should be construed, whenever possible, to give effect to every other provision, and examined the intent and purpose in granting the pardoning power. It concluded that the framers of the Oklahoma constitution meant to give full effect to the pardoning power, and found that the convicted felon, pardoned by the governor, was fully eligible to seek elective office.

■ The Cloud case differs from the instant one in that Cloud was pardoned whereas the defendant Gualano was restored to the rights of citizenship. Since Gualano had been convicted of Federal crimes, a pardon for those crimes could come only from the President of the United States. The Federal conviction, nonetheless, affected his right to hold public office in the State of Illinois and, as we have seen, such disqualification arises solely from section 4, Article IV of the Illinois Constitution.

■ The Court of Appeals of Kentucky encountered a similar problem in the case of Arnett v. Stumbo, 287 Ky 433, 153 SW2d 889 (1941). The defendant had been convicted and sentenced for a felony under Federal law. After he was discharged from parole, the Governor of Kentucky issued a "Certificate of the Restoration of the Rights of Citizenship." Thereafter the defendant filed nominating petitions for the office of sheriff. Citizens and taxpayers challenged his candidacy on the ground that the law of Kentucky disqualified a person convicted of a felony from holding public office. The trial court ruled that, despite the lack of a presidential pardon, the governor's Restoration of Rights removed the disqualification. In affirming this ruling the Court of Appeals quoted with approval from the brief of the appellee:

"It must be borne in mind that the disqualification which results from the conviction is not derived from the laws of the United States (or other convicting sovereignties), but rests solely upon the Constitution of Kentucky. . . . It is a collateral consequence, not flowing from the offense, but resulting to the offender by reason of the Constitutional provisions alone. The right to vote and to hold office in a state comes from the State and is subject to its regulation and control. . . . The conviction is not affected by the Governor's act; merely the incidental consequences (relating exclusively to suffrage and office-holding rights in this Commonwealth) resulting from the operation of state laws, are cancelled and relieved."

Likewise, in the present case, the Restoration of Rights does not affect Gualano's Federal conviction, but only the consequences which flow, due to that conviction, from the Illinois Constitution.

In an effort to learn the intent of the drafters of section 4, Article IV, and section 13, Article V, we have

215

thoroughly studied the proceedings and debates of the Constitutional Convention of 1869–70. The provision which finally became section 4 of Article IV was proposed to the convention by the Committee on the Legislative Department in January 1870. Section 32 of the committee's report was:

> "The General Assembly shall exclude from the privilege of being elected to either house, any person convicted of bribery, perjury or other infamous crime."

Later, the committee submitted several amendments to its report but none as to section 32. In February the convention resolved itself into the Committee of the Whole for the purpose of considering the report. When section 32 was reached for debate, three principal points were discussed: whether the proposed exclusion should be broadened to include all offices rather than just membership in the general assembly; whether the section should be modified by exempting from the exclusion any person whose innocence was established after his conviction, and whether the right to exclude a person from membership in the general assembly should be left to the legislature or be stated in the constitution.

An amendment was offered to strike from the committee's proposal the words "either house" and insert in their stead the words "any office in this State." The amendment was defeated. An amendment was offered to add to the section the words "unless after such conviction his innocence shall be established." The amendment failed to pass. However, a substitute was offered for the entire section which did carry. The substituted section took from the general assembly the right to exclude and made such exclusion constitutionally mandatory:

"No person who has been, or hereafter shall be, convicted of bribery, perjury or other infamous crime, shall be eligible to a seat in the General Assembly."

When the debate on all sections of the committee's report was completed, it was moved and agreed that the report, as amended, would be reported to the convention with the recommendation that it be approved. In March the report was read to the convention and section 31 (the former section 32, as amended) was adopted and the whole report was referred to the Committee on Revision and Adjustment. This committee reported to the convention in May 1870. Section 31 had been revised to apply to all offices of profit or trust and was designated as section 4 of Article IV. The convention adopted the report and ordered the article enrolled as Article IV of the constitution.

The provision which became section 13 of Article V was reported to the convention by the Committee on the Executive Department. Its unanimous report was made in January 1870. Section 16 of the report was as follows:

"The Governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses, under such regulations as may be provided by law."

In February the convention resolved itself into the Committee of the Whole to consider the report. The chairman of the Committee on the Executive Department explained that section 16 differed from the provision in the constitution of 1848 in that it provided for the legislature to fix the terms upon which the governor could exercise the power to pardon. In the ensuing debate some delegates favored retaining the 1848 constitutional provision, but the members of the reporting committee vigorously defended the new proposal. One committee

member said some members of the committee were for a full pardoning power being given to the governor; some were against it, while others were in favor of it under regulations prescribed by law. He said they thought that section 16 was the "golden mean." The delegates discussed the abuse or possible abuse of the pardoning power, the desirability or undesirability of having the legislature fix the limits under which this "supreme power of the State" could be exercised, whether innocent men were convicted of crimes and the desirability of providing hope for convicted men so that their reformation would be encouraged.

An amendment was offered to add to the words "under such regulations as may be provided by law," the supplemental words "relative to the manner of applying for such reprieve, commutation or pardon." The proposed amendment, it was said, would give the legislature the power to prescribe that notice of applications for executive clemency be given to interested parties "but it would not authorize the legislature in any way to cut off the right of the executive to use his discretion." This argument prevailed over the protests of the committee chairman that the pardoning power "is a thing that calls for regulation in this State, more than anything I know of. We want to leave it to the Legislature to regulate it." The amendment was agreed to.

In April the Executive Department's report was presented to the convention. Section 17 of the report (the former section 16) was adopted without change. The section read:

> "The Governor shall have power to grant reprieves, commutations and pardons, after convictions, for all offenses, subject to such regulations as may be provided by law relative to the manner of applying for such reprieve, commutation or pardon."

218

The adopted report was referred to the Committee on Revision and Adjustment.

The Revision Committee's report was read to the convention in May 1870. The only change in section 17 (which had become section 13 of Article V) was that the word "therefor" had been substituted for the last six words of the section, "for such reprieve, commutation or power." The convention ordered the article enrolled as Article V of the constitution. Debates and Proceedings of the Constitutional Convention of the State of Illinois, vols 1 and 2, E. L. Merritt and Brother, 1870.

██ We conclude that it was the intention of the drafters of the provision which became section 4 of Article IV to couch the prohibition against holding public office after conviction for an infamous crime in terms which would eliminate legislative interference with the prohibition or legislative discretion in applying it. In the debate the delegates were considering the report of the Committee on the Legislative Department. Their concern was only with the legislature. They defeated an amendment which would have applied the prohibition to offices other than the general assembly because they though it was out of place in a report relating to the legislature. Their negative vote on the amendment which sought to exempt from the prohibition persons whose innocence became established was directed to members of the legislature. At no time during the debate did they consider the governor's role or the possible impact of his pardoning power upon the measures they were discussing.

██ In regard to the provision which became section 13 of Article V, we conclude that it was the intention of the drafters of the provision to give the governor unlimited power to grant reprieves, commutations and pardons. They defeated the proposal of the Committee on the Executive Department that this power be subject

219

to legislative supervision. They recognized that imperfections can exist in the judicial machinery and occasions might arise when an innocent person would be convicted of a crime; they also foresaw that the pardoning power would be a means of encouraging guilty persons to become upstanding citizens of the community and to prove by exemplary conduct that they were worthy of public confidence. It was the manifest purpose of those who designed our constitutional framework to give the governor full and untrammeled discretion in remedying injustices, in lowering sentences and in restoring the rights of citizenship. There was no suggestion in the debate that this pardoning was to be exercised outside of the purview of section 4 of Article IV—a section which had been formulated and approved prior to the debate on section 13 of Article V. The only qualification attached to section 13 was procedural: "subject to such regulations as may be provided by law relative to the manner of applying therefor."

■■ Section 13 in no way limits or modifies the full force and effect of the governor's power and discretion. Section 13 vests in the governor the exclusive power to grant, after conviction, reprieves, commutations and pardons. People ex rel. Brundage v. LaBuy, 285 Ill 141, 120 NE 537 (1918). Such power is subject only to the limitation that the legislature may establish the manner of applying therefor. People ex rel. Smith v. Jenkins, 325 Ill 372, 156 NE 290 (1927). The granting of a restoration of rights falls within the ambit of the governor's employment of the pardoning power. When the framers of the Illinois Constitution incorporated that power, they meant it to be used effectively. They did not intend to circumscribe its effectiveness by Article IV, section 4.

■ The plaintiffs next contend that even if the governor could remove the constitutional disqualification, he

did not do so. They point to the following language in the certificate issued to the defendant:

". . . I, Samuel H. Shapiro, Governor of the State of Illinois, hereby restore to the said James V. Gualano . . . all his

## RIGHTS OF CITIZENSHIP

excepting such rights as by reason of conviction for infamous crimes or otherwise are hereafter denied him by the Constitution of this State."

The plaintiffs emphasize the words *excepting* and *hereafter* in the certificate and the words *excepting* and *thereafter* in the relevant statute:

"The Governor shall have the right to grant any person that has been, now is, or may be hereafter confined in the penitentiary, reformatory or correctional institution, whom he shall deem a proper person to enjoy that privilege, a certificate of restoration to all his rights of citizenship, excepting such privileges as, by reason of conviction for infamous crime, or otherwise, are thereafter denied such person by the constitution of this State. . . ." Ill Rev Stats 1967, c 108, § 49.

The plaintiffs maintain that the excepting clause of the certificate operates to forestall the defendant from being restored to eligibility for public office. They argue that the words "hereafter" in the certificate and "thereafter" in the statute refer to those rights and privileges lost because of a conviction for an infamous crime. They reason that since the purpose of a certificate of restoration is to restore rights which have been lost because of a prior conviction, it would be foolish to interpret the instant certificate as meaning that it does not restore rights for future crimes. In effect, the plaintiffs would

221

have the Governor's certificate construed as saying that the rights of citizenship have been restored *except* as to those rights which have been *heretofore* denied, rather than *except* for those rights which are *hereafter* denied; and they would have the statute construed as saying that the governor shall have the power of restoring rights of citizenship *except* as to those privileges which have been denied *theretofore* rather than *except* as to those privileges which are *thereafter* denied. We cannot accept these constructions. As used in the certificate and statute, both "hereafter" and "thereafter" are words of futurity. The excepting clauses of the certificate and the statute, although they may be superfluous, mean that rights and privileges which have been restored can only be affected by a future conviction for an infamous crime.

 The Illinois Constitution provides that an individual convicted of an infamous crime is ineligible to hold an office of profit and trust. The constitution also provides for the removal of such ineligibility by the governor. The governor's certificate of restoration of the rights of citizenship removed the defendant's ineligibility to hold public office.

The judgment is reversed.

Reversed.

SCHWARTZ and McNAMARA, JJ., concur.