# Illinois Official Reports

## Appellate Court

---

### *Walker v. Barron*, 2021 IL App (1st) 210080

---

| | |
|---|---|
| Appellate Court Caption | DAVID WALKER SR., ROBERT J. DEPOLO, and MARINA I. PANGOPOULOS, Petitioners-Appellants, v. WILLIAM BARRON, RONDAL JONES, and THOMAS JACONETTY, in Their Official Capacities as Members of the Markham Municipal Officers Electoral Board; ROGER AGPAWA; and KAREN YARBROUGH, in Her Official Capacity as the Cook County Clerk, Respondents-Appellees. |
| District & No. | First District, First Division<br>No. 1-21-0080 |
| Filed | April 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 20-COEL-30; the Hon. James R. Carroll, Judge, presiding. |
| Judgment | Circuit court judgment reversed.<br>Board decision reversed. |
| Counsel on Appeal | Andrew Finko, of Chicago, for appellants.<br><br>Stephen M. Laduzinsky and Natalie K. Wilkins, of Laduzinsky & Associates, P.C., of Chicago, for appellee Roger Agpawa.<br><br>Burton S. Odelson, John B. Murphy, and Ross D. Secler, of Odelson, Sterk, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, for other appellees. |

Panel                                 JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justice Coghlan concurred in the judgment and opinion.
Presiding Justice Walker dissented, with opinion.

## OPINION

¶ 1        Petitioners, David Walker Sr., Robert J. Depolo, and Marina I. Pangopoulos, appeal from the circuit court of Cook County's order affirming a decision of the Markham Municipal Officers Electoral Board (Board), finding that respondent, Roger Agpawa, is a duly qualified candidate for the office of mayor of the City of Markham. For the reasons that follow, we reverse the circuit court's judgment that affirmed the Board's decision, and we reverse the Board's decision. We find that Agpawa is not eligible to seek or hold municipal office in Illinois.

¶ 2                                    I. BACKGROUND

¶ 3        In 2018, Agpawa was elected mayor of the City of Markham, despite being ineligible to hold that office due to a 1999 federal felony conviction for mail fraud, an infamous crime. He was barred from taking the oath of office by a *quo warranto* judgment entered by the circuit court. On appeal, we affirmed (*People ex rel. Foxx v. Agpawa*, 2018 IL App (1st) 171976, ¶ 1), and filed our mandate in the circuit court on June 14, 2018. Subsequently, then-Governor Bruce Rauner issued a document purporting to restore Agpawa's "rights." See *infra* ¶ 46 (The document has no title. Agpawa refers to the document as a "certificate of restoration of rights." For convenience, we will refer to the document as "the Governor's certificate."). On September 25, 2018, Agpawa was sworn in as mayor of the City of Markham.[1] That same day, he filed an emergency motion to vacate the circuit court's judgment barring him from taking the oath of office.[2] On September 28, 2018, the circuit court vacated its *quo warranto* judgment. *Infra* ¶ 47. In its written order, the circuit court found "that, by virtue of a Restoration of Rights issued by the Governor of the State of Illinois, *** Agpawa's 1999 federal conviction for mail fraud no longer renders him ineligible to hold municipal office in Illinois." No appeal was taken from the circuit court's order vacating the earlier *quo warranto* judgment.

¶ 4        In 2020, Agpawa filed nomination papers seeking reelection as mayor. Petitioners objected to Agpawa's nomination papers on the grounds that Agpawa was not a duly qualified candidate pursuant to section 29-15 of the Election Code (10 ILCS 5/29-15 (West 2018)) and section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2018)) due to his federal felony conviction for an infamous crime. They asserted that Agpawa had not received a pardon from the President of the United States and that the governor of Illinois's pardon power does not extend to pardoning federal convictions. The petition further requested that Agpawa "and aligned officers" recuse themselves from any Board proceedings on their petition and requested that the Board's legal counsel, the Odelson & Sterk law firm, "be recused from

_____

[1]No explanation is offered by the parties as to how Agpawa was lawfully sworn in while a valid and enforceable judgment was in effect barring him from taking the oath of office and before the circuit court had any opportunity to reexamine its judgment in light of the Governor's certificate.

[2]We discuss some of our serious issues with this "motion" below. See *infra* ¶ 13.

advising the Electoral Board, due to their conflicts of interest," namely that Odelson & Sterk attorneys represented Agpawa in the circuit and appellate court proceedings in *Agpawa*, 2018 IL App (1st) 171976, and in his efforts to obtain the Governor's certificate.

¶ 5    Thomas Jaconetty was appointed as a public member of the Board because the Markham City Clerk, Jennifer Coles, had also filed nomination papers for the office of mayor of the City of Markham. Petitioners filed a motion to recuse respondents, William Barron and Rondal Jones, and the Board's attorneys, the Odelson & Sterk law firm. The motion asserted that Barron was Agpawa's "walk-the-streets supporter," and that Barron, Jones, and Odelson & Sterk were all financial donors to Agpawa's political action committee. Petitioners' motion also sought recusal of Odelson & Sterk due to its representation of Agpawa "privately and in relation to confidential communications with former Gov[ernor] Rauner to broker a deal" for Agpawa. The motion further asserted that Odelson & Sterk had a financial interest in Agpawa remaining on the ballot because the firm "is generating revenue from the municipal representation, which would be terminated if Agpawa was removed. [Odelson &] Sterk is financially motivated to maintain that revenue stream, and could be biased in its directions provided to the electoral board." Ultimately, the parties filed cross-motions for summary judgment on the petitioners' objections.

¶ 6    On December 14, 2020, the Board denied petitioners' recusal motion. After hearing argument, the Board voted to grant Agpawa's motion for summary judgment and denied the petitioners' objections. In its written decision, the Board found that petitioners' motion to recuse Barron, Jones, and Odelson & Sterk was without merit because neither Barron nor Jones were running for the same office as Agpawa, neither had any pecuniary interest in the outcome, they were not required to serve as witnesses at the hearing, and they were not in a position of having to judge their own credibility. The Board also noted that petitioners failed to timely raise their recusal motion because the motion was made before the Board and not before the circuit court under Cook County General Order 21 (see Cook County Cir. Ct. G.O. 21 (Feb. 1, 2005)) and any allegations of political bias were insufficient to force recusal. As for Odelson & Sterk, the Board observed that the Board was entitled to its choice of counsel, none of the firm's attorneys were on the Board or had a vote on the objection, there was no statutory basis for removal of the Board's counsel, none of the Board's counsel's recommendations were binding on the Board, and the firm's representation of Agpawa ended when he was elected mayor. The Board accused petitioners' counsel of attempting to "manufacture an artificial conflict" by attempting to call two Odelson & Sterk attorneys as witnesses. The Board found that "[i]t is clear that the purpose of the Motion [to Recuse] and, in particular, the request to disqualify the law firm, is frivolous and is purely for the purposes of harassment and potentially engineering a tactical advantage."

¶ 7    The Board then turned its focus to petitioners' objection to Agpawa's qualifications. The Board found that it did not have the authority to rule on the question of whether the Governor exceeded his authority by issuing the Governor's certificate. The Board observed that the "Circuit Court of Cook County (with the mandate returned to enforce or otherwise address its original order and judgment) vacated its original order" barring Agpawa from taking the oath of office and found that he was no longer ineligible to hold office, and that order had not been challenged since its entry. The Board found, "The action of the Governor of the State of Illinois, and the order of the Circuit Court of Cook County, end this Electoral Board's inquiry."

¶ 8 Petitioners sought administrative review in the circuit court. After conducting a *de novo* review, the circuit court affirmed the Board's decision. Petitioners filed a timely notice of appeal in this court.

¶ 9 II. ANALYSIS

¶ 10 On appeal, petitioners contend that Agpawa is not a duly qualified candidate for the office of Mayor of the City of Markham. They also assert that the Board violated their due process rights by denying the motion to recuse Barron, Jones, and Odelson & Sterk and that the Board should not have been permitted to participate in this administrative review action in the circuit court because the Board was not named as a respondent and, relatedly, its participation in the circuit court proceedings violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2018)).

¶ 11 At the outset, we recognize that petitioners' challenge below was to whether Agpawa's name could appear on the ballot for the 2021 primary and consolidated election, and that the election has already occurred. Petitioners' challenge is therefore moot, as we can longer affect whether Agpawa's name will appear on the ballot. We find, however, that we may still consider petitioners' appeal under the public interest exception to the mootness doctrine, given the significant interests involved in allowing only qualified candidates to hold municipal office.

¶ 12 The criteria for applying the public interest exception are "(1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *In re Shelby R.*, 2013 IL 114994, ¶ 16. Here, the question of whether the governor may restore the eligibility to seek and hold municipal office that was lost by virtue of a federal felony conviction for an infamous crime is undoubtedly a question of a public nature. The question has not been addressed under the current constitution and legislative scheme, and thus an authoritative determination is desirable. Finally, the question is likely to recur. While we are not aware of any other candidates seeking municipal office with convictions for infamous federal felony crimes, the Cook County State's Attorney previously sought to bar Agpawa from taking the oath of office due to his ineligibility for municipal office, and if elected, he would remain subject to *quo warranto* challenges for the duration of his term. We find that the public interest exception to the mootness doctrine applies, and we will therefore decide the merits of petitioners' appeal.

¶ 13 As a preliminary matter, we are compelled to address two issues reflected in the record related to our decision in *Agpawa*. First, we address Agpawa's "motion" to vacate the circuit court's original *quo warranto* judgment. Neither a copy of Agpawa's "motion" to vacate nor any transcript of any proceedings in the circuit court on the "motion" is contained in the record before us. This presents us with a jurisdictional black hole. The circuit court entered its original *quo warranto* judgment declaring Agpawa ineligible for municipal office on August 9, 2017, and lost jurisdiction once Agpawa filed a timely notice of appeal to this court. Our mandate in *Agpawa*, 2018 IL App (1st) 171976, affirming the circuit court's judgment was filed in the circuit court on June 14, 2018. We did not remand any aspect of the case to the circuit court, therefore the circuit court only had jurisdiction to enforce our judgment. See Ill. S. Ct. R. 369(b) (eff. July 1, 1982). The circuit court's vacatur of its original September 28, 2018, *quo warranto* judgment is valid and enforceable only if (1) Agpawa's "motion" to vacate was a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)) collaterally attacking the circuit court's judgment (see *Price v. Phillip Morris, Inc.*, 2015 IL 117687, ¶ 26 (explaining why a section 2-1401 petition may be filed in the circuit

- 4 -

court even after the circuit court's judgment has been affirmed on appeal)) or (2) the circuit court was revested with jurisdiction. For revestment to apply, "*both* parties must: (1) actively participate in the proceedings; (2) fail to object to the untimeliness of the late filing; *and* (3) assert positions that make the proceedings inconsistent with the merits of the prior judgment and support the setting aside of at least part of that judgment. If any one of those requirements remains unmet, the doctrine does not revest the court with jurisdiction." (Emphases in original.) *People v. Bailey*, 2014 IL 115459, ¶ 25. The only evidence in the record before us is the circuit court's September 28, 2018, order, which states that the State "does not dispute" that the governor issued the certificate but says nothing about what the State said regarding the effect of the certificate. *Infra* ¶ 47. On this record, we cannot determine whether the circuit court had subject-matter jurisdiction when it entered its order vacating its *quo warranto* judgment, or whether the circuit court's vacatur order is void for lack of subject-matter jurisdiction. From what we know, the judgment in *Agpawa* remains is full force and effect.

¶ 14    The second issue we address is a statement in Agpawa's brief related to the circuit court's September 28, 2018, order vacating its original *quo warranto* judgment. In a footnote, Agpawa's brief asserts "The entry of the September 28, 2018 Order vacated the August 9, 2017 Order and rendered the decision in *Agpawa*, 2018 IL App (1st) 171976 *void*." (Emphasis added.) This statement was also repeatedly advanced before the Board by Agpawa in support of his eligibility to seek and hold the office of mayor. This is a blatantly incorrect statement and is contrary to our supreme court's precedent that a lower court has no authority to vacate the judgment of a court of review. *Price*, 2015 IL 117687, ¶¶ 30-39. Assuming Agpawa's "motion" was a proper section 2-1401 petition, the circuit court was asked to revisit its own judgment based on facts "that were not of record in the original action and that were not considered by the appellate court." *Id.* ¶ 26. In other words, Agpawa sought postjudgment relief in the circuit court from the circuit court's *quo warranto* judgment, relief that the circuit court could grant only if it had proper jurisdiction. The circuit court's order vacating its *quo warranto* judgment did not purport to vacate our judgment in *Agpawa*, and counsel's suggestion that our judgment in *Agpawa* is void is patently false.

¶ 15    Turning to the merits of this case, we first address petitioners' argument that Agpawa is not eligible to seek and hold municipal office. Petitioners argue that the governor has no authority to pardon a federal offense. They contend that section 3.1-10-5(b) of the Municipal Code declares that a person with a conviction for an infamous crime is ineligible to hold a municipal office and, because Agpawa has a federal felony conviction for an infamous crime, his eligibility to seek and hold municipal could only be restored by a presidential pardon, as the governor of Illinois's pardon power cannot reach federal crimes. The parties agree that a pardon from the President of the United States for a federal crime would restore Agpawa's right to seek and hold municipal office in Illinois. See *Nixon v. United States*, 506 U.S. 224, 232 (1993) ("the granting of a pardon is in no sense an overturning of a judgment of conviction by some other tribunal; it is '[a]n executive action that mitigates or sets aside *punishment* for a crime.' " (Emphasis in original.) (quoting Black's Law Dictionary 1113 (6th ed. 1990))). Agpawa argues, however, that the governor has the authority to restore state rights that are lost as a collateral consequence of a federal conviction. Agpawa relies heavily on this court's decision in *People ex rel. Symonds v. Gualano*, 124 Ill. App. 2d 208 (1970), which addressed

a similar issue under the Illinois Constitution of 1870 and state statutes in effect at that time. We agree with petitioners and disagree with Agpawa.

¶ 16 Our research does not disclose any decision from our supreme court on the question of whether the governor has the authority to restore eligibility to seek and hold municipal office that was lost because of a federal felony conviction for an infamous crime. Our review of this issue requires that we interpret the Illinois Constitution of 1970 and existing statutes, which are questions of law that we review *de novo. Gregg v. Rauner*, 2018 IL 122802, ¶ 23. We must ascertain and give effect to the language of the constitution and statutory enactments, given their plain and ordinary meanings, and consider the constitutional and statutory provisions in their entirety. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. We interpret a clemency order so as to ascertain and give effect to the intent of the governor. *People v. Morris*, 219 Ill. 2d 373, 384 (2006).

¶ 17 Agpawa argues that the governor possesses the authority to restore a person's eligibility to seek and hold municipal office through the governor's pardon power. Article V, section 12, of the Illinois Constitution of 1970 provides "The Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefore may be regulated by law." Ill. Const. 1970, art. V, § 12. The governor's pardon power is "extremely broad" and limited only by the governor's conscience. *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 473 (2004). Despite the breadth of the pardon power, our supreme court has not, to our knowledge, determined that the governor may use the pardon power to affect a federal offense, including the collateral consequences that result from a federal conviction. And while the constitution clearly states that the legislature may regulate the process for applying for a pardon, this provision "does not in any way restrict the Governor's power to act." *Id.* at 467.

¶ 18 In *People ex rel. Madigan*, our supreme court discussed the constitutional authority given to the governor to "grant reprieves, commutations, and pardons" in the context of reviewing the grant of clemency to numerous persons previously sentenced to death. (Internal quotation marks omitted.) *Id.* at 473-74.

¶ 19 "A pardon is '[a]n executive action that mitigates or sets aside punishment for a crime.' " *Id.* at 473-74 (quoting Black's Law Dictionary 1113 (6th ed. 1990)).

> " '[A] pardon may be full or partial, absolute or conditional. A pardon is full when it freely and unconditionally absolves the person from all the legal consequences of a crime and of the person's conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided; it is partial where it remits only a portion of the punishment or absolves from only a portion of the legal consequences of the crime. A pardon is absolute where it frees the criminal without any condition whatsoever; and it is conditional where it does not become operative until the grantee has performed some specified act, or where it becomes void when some specified event transpires.' " *Id.* at 474 (quoting 67A C.J.S., *Pardon & Parole* § 2, at 6 (2002)).

¶ 20 "A commutation is the change of punishment to which a person has been condemned to a less severe one. [Citation.] It removes a judicially imposed sentence and replaces it with a lesser, executively imposed sentence. [Citation.] Finally, a reprieve is 'the postponement of the execution of a sentence.' [Citation.]" *Id.*

¶ 21    There is, however, no constitutional provision that expressly grants the governor the authority to issue a governor's certificate to restore rights. To our knowledge, the supreme court has never had occasion to define the phrase "restoration of rights" in the context of a gubernatorial action or acknowledge the phrase as part of the governor's pardon power.

¶ 22    Here, Agpawa lobbied the Governor in an attempt to restore his eligibility to seek and hold the municipal office of mayor, and he submitted numerous proposals suggesting language that specified Agpawa was restored to his right to hold the office of mayor of the City of Markham. Notably, the Governor did not adopt the language suggested by Agpawa, and the Governor's certificate does not specify which rights were being restored. See *infra* ¶ 46. The Governor's certificate acknowledged Agpawa's federal mail fraud conviction and sentence and recited that "by virtue of the authority vested in me by the Constitution of the State" Agpawa was a "fit and proper subject for Restoration of Rights of Citizenship" and "[o]f the said crime of which convicted" is "discharged of and from all further hinderance and restored to all rights of citizenship which may have been forfeited under Illinois law as a result of the federal conviction. All rights under federal law which were forfeited as a result of this conviction are unaffected by this action." *Infra* ¶ 46. The Governor's certificate appears to be modeled on the certificates that were upheld in *Gualano* and a modified clemency order. See *Morris*, 219 Ill. 2d at 384.

¶ 23    Agpawa's relies primarily on *Gualano* as authority in support of his eligibility to hold municipal office. The facts of *Gualano* are similar to this case. *Gualano* was decided under the Illinois Constitution of 1870 and a statutory provision that has since been repealed. Gualano had twice pleaded guilty to federal mail fraud charges. *Gualano*, 124 Ill. App. 2d at 210. In 1961, he was elected president of the Village of Justice and fended off a *quo warranto* complaint in the circuit court. *Id.* We reversed the circuit court's denial of a *quo warranto* judgment because mail fraud was an infamous crime and a state statute barred Gualano from taking the oath of office absent a restoration of rights under a pardon. *People ex rel. Symonds v. Gualano*, 97 Ill. App. 2d 248, 255 (1968). After our judgment, Gualano petitioned the governor for a restoration of rights pursuant to section 124-2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1967, ch. 38, ¶ 124-2 (repealed by Pub. Act 77-2097, § 8-5-1 (eff. Jan. 1, 1973))), which the governor granted, and Gualano was issued certificates restoring him to " 'all his rights of citizenship.' " *Gualano*, 124 Ill. App. 2d at 211.

¶ 24    After the restoration of rights issued, the circuit court removed Gualano from office and Gualano appealed. *Id.* at 211-12. The *Gualano* court reversed, finding that the governor had the authority to restore Gualano's rights to hold municipal office despite the federal conviction. The parties' arguments focused on two provisions of the Illinois Constitution of 1870: article IV, section 4, which prohibited a person with a conviction for an infamous crime from holding public office; and article V, section 13, which embodied the governor's pardon power. *Id.* at 213-14. Also at issue was section 124-2 of the Code of Criminal Procedure of 1963, which provided that persons convicted of infamous crimes were barred from holding any office "unless he or she is again restored to such right by the terms of a pardon for the offense or otherwise according to the law." Ill. Rev. Stat. 1967, ch. 38, ¶ 124-2(a) (repealed by Pub. Act 77-2097, § 8-5-1 (eff. Jan. 1, 1973)). Section 124-2 also provided that at "[a]ny time after a judgment of conviction is rendered a person convicted of an infamous crime may petition the Governor for a restoration of rights." *Id.* ¶ 124-2(b); *Gualano*, 124 Ill. App. 2d at 213. The *Gualano* court also looked to other jurisdictions and concluded that Gualano's disqualification

to hold municipal office "arises solely from section 4, Article IV of the Illinois Constitution [of 1870]," and that the restoration of rights "does not affect Gualano's [f]ederal conviction, but only the consequences which flow, due to that conviction, from the Illinois Constitution." *Gualano*, 124 Ill. App. 2d at 214-15. The *Gualano* court examined the history of the governor's constitutional pardon power and found that the legislature "did not intend to circumscribe its effectiveness by Article IV, section 4 [of the Illinois Constitution of 1870]." *Id.* at 220. The *Gualano* court concluded that the governor possessed the constitutional authority to remove a federally convicted felon's ineligibility to hold public office. *Id.* at 222.

¶ 25    The *Gualano* court accepted the proposition that, while the governor has no authority to pardon a federal offense, as "a pardon for those crimes could come only from the President of United States" (*id.* at 214), the governor's pardon power includes the authority to remove the collateral consequences of a federal offense that arise under state law. To support its reasoning, the *Gualano* court relied on *Arnett v. Stumbo*, 153 S.W.2d 889 (Ky. 1941). There, Stumbo was convicted of a federal felony and thus was no longer eligible to hold public office under the Kentucky Constitution. *Id.* at 890. The disqualifying constitutional provision provided, however, that Stumbo could be restored to such right by executive pardon. *Id.* There was no dispute that the governor could restore eligibility to hold public office; the issue was whether the governor's authority extended to those convicted of federal felonies. The *Arnett* court answered in the affirmative, in part because the disqualification arose as a state-imposed collateral consequence flowing from the federal conviction, and the governor was authorized under the Kentucky Constitution to restore eligibility to hold public office. *Id.* at 891-92. The *Gualano* court, relying on *Arnett*, found that—despite no analogous Illinois constitutional provision specifically permitting the governor to restore rights—the governor of Illinois could, under his pardon power, do indirectly what he could not do directly and order a restoration of state rights lost as a result of a federal conviction, despite lacking the constitutional authority to pardon a federal offense.

¶ 26    We do not believe that the *Gualano* court's reasoning is consistent with the current constitutional and legislative landscape in Illinois. The Illinois Constitution of 1970 specifically grants the governor the authority to issue "reprieves, commutations, and pardons," but nothing in the text or structure of the Illinois Constitution suggests that the governor has the authority to pardon offenses against the United States or against other states. Nor does the Illinois Constitution contemplate a separate grant of gubernatorial power for the restoration of rights lost due to a qualifying conviction from a sovereign jurisdiction.

¶ 27    The Illinois Constitution of 1970 grants separate powers to the executive, legislative, and judicial branches of government. The legislative power is vested in the General Assembly (Ill. Const. 1970, art. IV, § 1), which is empowered to enact laws governing the creation of local units of government (Ill. Const. 1970, art. VII, § 12). "When a municipal office is created by statute, the legislature has the discretionary authority to specify the qualifications required to hold that office so long as the qualifications are reasonably related to the specialized demands of the office." *People v. Hofer*, 363 Ill. App. 3d 719, 723 (2006) (citing *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 418 (1997), and *Hoskins v. Walker*, 57 Ill. 2d 503, 509 (1974)).

¶ 28    The legislature has enacted two separate provisions regarding the disqualification of persons convicted of infamous crimes from seeking or holding public office in Illinois. Section

- 8 -

3.1-10-5(b) of the Municipal Code provides: "A person is not eligible to take the oath of office for a municipal office if that person *** has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." 65 ILCS 5/3.1-10-5(b) (West 2018). The prohibition in section 3.1-10-5(b) arises solely out of a legislative enactment, as municipal offices are created by the legislature. See *People ex rel. Ryan v. Coles*, 64 Ill. App. 3d 807, 811 (1978); *Hofer*, 363 Ill. App. 3d at 723; *Alvarez v. Williams*, 2014 IL App (1st) 133443, ¶ 16. There is no provision in section 3.1-10-5(b) that restores eligibility for municipal office after conviction for an infamous crime. As we have previously found, "[t]he legislature addressed the limitations on eligibility for municipal office when amending section 3.1-10-5 of the Municipal Code in 1992. While the legislature had the opportunity to add a restoring clause, the legislature failed to do so." *Pappas v. Calumet City Municipal Officers' Electoral Board*, 288 Ill. App. 3d 787, 790 (1997). In *Agpawa*, we found that Agpawa's federal felony conviction for an infamous crime rendered him ineligible to hold municipal office under section 3.1-10-5(b) of the Municipal Code and that his eligibility to seek and hold municipal office was not restored under our legislative scheme. *Agpawa*, 2018 IL App (1st) 171976, ¶¶ 19-29 (explaining that section 5-5-5(a), (b) of the Unified Code of Corrections (730 ILCS 5/5-5-5(a), (b) (West 2016)) does not restore the right of people convicted of infamous crimes to hold municipal office for the purposes of section 29-15 of the Election Code). We noted that the legislature amended section 3.1-10-5(b) eight times since our decision in *Pappas* and never added a restoration clause. *Id.* ¶ 28. Significantly, since our judgment in *Agpawa*, there has been no amendment to section 3.1-10-5(b). While the legislature had numerous opportunities to include a restorative provision in section 3.1-10-5(b) of the Municipal Code, it has not done so. "[W]here the legislature chooses not to amend terms of a statute after judicial construction, it will be presumed that it has acquiesced in the court's statement of legislative intent." *Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 30. In other words, a plain reading of section 3.1-10-5(b) provides that a person convicted of an infamous crime is not eligible for election to a municipal office.

¶ 29    The legislature knows how to restore eligibility to seek and hold elective office. Section 29-15 of the Election Code provides

> "Any person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense or otherwise according to law." 10 ILCS 5/29-15 (West 2018).[3]

As we found in *Agpawa*, section 5-5-5(a), (b) of the Unified Code of Corrections does not restore the right of people convicted of infamous crimes to seek or hold municipal office for the purposes of section 29-15 of the Election Code (*Agpawa*, 2018 IL App (1st) 171976, ¶¶ 19-29), and we are not aware of any other state statute that might automatically restore the eligibility of a person convicted of an infamous crime to seek or hold municipal office by operation of law or that might provide a legislative avenue toward restoration of eligibility to seek and hold municipal office.

---

[3] Although section 124-1 of the Code of Criminal Procedure of 1963 was repealed, courts interpreting section 29-15 of the Election Code still rely on its definition of infamous crime. *Agpawa*, 2018 IL App (1st) 191976, ¶ 17 n.1.

¶ 30    Our supreme court has never opined on whether section 3.1-10-5(b) of the Municipal Code and section 29-15 of the Election Code should be read *in pari materia* such that a person convicted of an infamous crime may be restored to their right to hold municipal office by the terms of a pardon for the offense.[4] However, assuming for the purposes of discussion that section 29-15 of the Election Code and section 3.1-10-5(b) of the Municipal Code should be read *in pari materia*, a pardon for a disqualifying offense would restore eligibility to seek and hold a municipal office. See 10 ILCS 5/29-15 (West 2018). A pardon is the only mechanism for restoring the right to seek and hold municipal office because our legislature has not enacted any statutory mechanism that would give effect to the language "otherwise according to law" in section 29-15 of the Election Code in the context of eligibility for municipal office. As the *Gualano* court observed, Gualano petitioned the governor for a restoration of rights under section 124-2(b) of the Code of Criminal Procedure of 1963. *Gualano*, 124 Ill. App. 2d at 213 (citing Ill. Rev. Stat. 1967, ch. 38, ¶ 124-2(b)). That statutory provision no longer exists, and our legislature has not enacted an analogous statute to restore eligibility for municipal office that was lost due to a federal conviction for an infamous crime. This is significant because the legislature reenacted section 124-2(a) of the Code of Criminal Procedure of 1963 in section 29-15 of the Election Code. See *Coles v. Ryan*, 91 Ill. App. 3d 382, 384 n.2 (1980). The phrase "otherwise according to law" in section 29-15 of the Election Code does not directly or indirectly refer to any existing statutory mechanism providing for the restoration of eligibility to seek or hold municipal office.

¶ 31    The legislature clearly knows how to provide for the restoration of lost rights "otherwise according to law": people convicted of other felonies are eligible to hold constitutionally created offices once they complete their sentences (see 730 ILCS 5/5-5-5(b) (West 2018)), and a person convicted of mutilating election materials or of perjury is barred from holding public employment—which includes any elected office in Illinois—for five years after the completion of their sentence (10 ILCS 5/29-6, 29-10 (West 2018)) but are then eligible for public employment once the specified term ends. Even more, the legislature knows how to provide for the restoration of lost rights for specific infamous crimes: perjury was specifically identified as an infamous crime under section 124-1 of the Code of Criminal Procedure of 1963 (see Ill. Rev. Stat. 1983, ch. 38, ¶ 124-1 (repealed by Pub. Act 84-1047, § 2 (eff. July 1, 1986))), and the legislature specifically provided that a perjury conviction only disqualifies a person from holding public office for five years after completing their sentence (10 ILCS 5/29-10 (West 2018)).

¶ 32    Taken together, it is clear that the legislature—the branch of government vested with constitutional authority to create municipalities and establish qualifications for holding public office—intended to generally treat convictions for infamous crimes differently than other felony convictions when it comes to restoring the eligibility to seek or hold public office. The

_____

[4] Our supreme court has indicated that "[the] bar [in section 3.1-10-5(b)] is not necessarily permanent. Under the Election Code [citation], convicted felons may recover their right to run for office through 'the terms of a pardon for the offense or otherwise according to law.' " *Bryant v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 473, 474-75 (2007) (supervisory order) (quoting 10 ILCS 5/29-15 (West 2004)); see also *Delgado v. Board of Election Commissioners of the City of Chicago,* 224 Ill. 2d 481, 482-83 (2007) (supervisory order) (same). But both *Bryant* and *Delgado* were supervisory orders and are therefore of no precedential value. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 221 (2008).

legislature could enact a statutory provision that restores eligibility to seek and hold public office to a person convicted of an infamous crime generally, or of mail fraud specifically, "according to law" through a legislative enactment, but it has not, and it did not retain the previous statutory mechanism permitting petitions for certificates of restoration of rights in section 124-2(b) of the Code of Criminal Procedure of 1963. Therefore, we find that the only mechanism available to a person convicted of an infamous crime to regain their eligibility to seek and hold public office is through the terms of a pardon for the offense that results in the disqualification.

¶ 33    Despite the complete absence of any constitutional or statutory authority to restore any right lost as a direct or collateral consequence resulting from an infamous federal offense, it appears the former governor took the concept of restoring Agpawa's eligibility for municipal office from the *Gualano* decision. The *Gualano* court found the governor had the authority to restore rights lost due to a conviction for a federal infamous crime because an existing statute permitted petitions for a restoration of rights. That statute evinced a legislative intent to recognize a "restoration of rights" consistent with the legislature's authority to establish the eligibility requirements for municipal office. Our current legislative scheme, however, only recognizes a pardon for the disqualifying offense as the sole mechanism to restore eligibility to seek and hold municipal office. 10 ILCS 5/29-15 (West 2018); 65 ILCS 5/3.1-10-5(b) (West 2018).

¶ 34    We presume that our legislature and the drafters of the Illinois Constitution of 1970 were aware that the governor—the head of the executive branch of a sovereign state—has no authority to issue pardons for offenses against separate sovereigns. The governor has the authority to issue reprieves, commutations, and pardons for offenses against the State. If Agpawa had an Illinois felony conviction for an infamous crime, the governor could pardon that offense and Agpawa's eligibility to seek and hold municipal office could be restored by "the terms of a pardon for the offense" since it is within the governor's power to "absolve[ ] the person from all the legal consequences of a crime and of the person's conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided." (Internal quotation marks omitted.) *People ex rel. Madigan*, 208 Ill. 2d at 474. But here, the parties do not contend, and we are aware of no authority to the effect, that then-Governor Rauner had the authority to pardon Agpawa for his federal conviction, and there is nothing that indicates that was the then-Governor's intention. The legislature has the constitutional authority to establish the qualifications and eligibility for municipal office, and because the governor's pardon power does not extend to a federal offense, he cannot eliminate the collateral consequences that result from a disqualifying federal conviction. The terms of the Governor's certificate issued to Agpawa do not qualify as "a pardon for the offense" under section 29-15 of the Election Code. Agpawa's eligibility to seek or hold municipal office in Illinois was not restored because the governor could not remove the collateral consequences that flow from the disqualifying federal conviction.

¶ 35    In light of our finding, we do not reach petitioners' other arguments on appeal.


                                   III. CONCLUSION

¶ 37    The judgment of the circuit court that affirmed the Board's decision is reversed, and the Board's decision is also reversed. Roger Agpawa, having been convicted of the infamous crime of mail fraud in 1999, was not a duly qualified candidate for any statutorily created municipal

- 11 -

office in Illinois, including the office of mayor of the City of Markham, and is, therefore, ineligible to hold or to take the oath of office as mayor of the City of Markham.

¶ 38    Circuit court judgment reversed.

¶ 39    Board decision reversed.

¶ 40    PRESIDING JUSTICE WALKER, dissenting:

¶ 41    I respectfully dissent because the Committee on the Executive Proposal No. 1, as a part of the Sixth Illinois Constitutional Convention, proposed the inclusion in the Illinois Constitution of 1970 that "[t]he Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefore may be regulated by law." Ill. Const. 1970, art. V, § 12; 6 Record of Proceedings, Sixth Illinois Constitutional Convention 390 (hereinafter Proceedings). The committee explained: "The only change of substance involved in this revised section is one that was" "added to allow the Governor to issue conditional pardons, as he may now grant full pardons." Proceedings 390. "Neither the existing pardons section nor this revision vest power in the General Assembly to do more than define procedures. The discretion to act is entirely that of the Governor." Proceedings 390.

¶ 42    The Committee intended only to broaden the pardon power from the powers granted under the 1870 Constitution. The General Assembly's repeal of section 124-2 cannot limit the governor's constitutional power to pardon. Thus, under the broader powers of the 1970 Constitution, the reasoning of *People ex rel. Symonds v. Gualano*, 124 Ill. App. 2d 208 (1970), is just as applicable now as it was in 1968. The restoration of rights granted to Agpawa does not affect his conviction for mail fraud, but it affects the consequences under Illinois law that flow from the federal conviction. *Gualano*, 124 Ill. App. 2d at 214-15.

¶ 43    Other jurisdictions agree that the power to pardon includes the lesser power to restore rights, including the right to hold public office. "[T]he authority of state governors to issue pardons restoring collateral civil rights forfeited *solely* as a result of state law, including the right to seek and hold a municipal or state office, to persons convicted of federal felonies has historically been affirmed." (Emphasis in original.) *Malone v. Shyne*, 2006-2190, p. 18 (La. 9/13/06); 937 So. 2d 343; see also *Lopez v. Kase*, 1999-NMSC-011, ¶ 12, 126 N.M. 733, 975 P.2d 346.

¶ 44    I would find that the governor's certificate of restoration of the rights of citizenship removed Agpawa's ineligibility to hold public office. For the reasons stated, I respectfully dissent from the majority's opinion.

FILED DATE: 9/25/2018 4:11 PM   2017CH05276



OFFICE OF THE GOVERNOR
JRTC, 100 W. RANDOLPH, SUITE 16 100
CHICAGO, ILLINOIS 60601

FILED
INDEX DEPARTMENT

SEP 2 5 2018

IN THE OFFICE OF
SECRETARY OF STATE

BRUCE RAUNER
GOVERNOR

Whereas, ROGER AGPAWA was convicted of the crime of Mail Fraud, Case: 1997 CR 820-2 in the Northern District of Illinois Federal Court and was sentenced December 22, 1999 to 36 Months Probation and 200 hours community service.

Whereas, it has been represented to me that ROGER AGPAWA is a fit and proper subject for Restoration of Rights of Citizenship.

Now, Know Ye, that I, BRUCE RAUNER, Governor of the State of Illinois, by virtue of the authority vested in me by the Constitution of the State, do by these presents:

RESTORATION OF RIGHTS OF CITIZENSHIP

ROGER AGPAWA

Of the said crime of which convicted, and ROGER AGPAWA is hereby discharged of and from all further hinderance and restored to all rights of citizenship which may have been forfeited under Illinois law as a result of the federal conviction. All rights under federal law which were forfeited as a result of this conviction are unaffected by this action.

Grant Restoration of Rights, Excluding the Right to Ship, Transport, Possess or Receive Firearms Which Were Forfeited by the Conviction.

DATED: September 14, 2018

BRUCE RAUNER
GOVERNOR

C-479

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br>　　　　　　Plaintiff, | No. 2017-CH-05276 |
| v. | Calendar 16 |
| ROGER AGPAWA,<br>　　　　　　Defendant. | Judge David B. Atkins |

## ORDER

THIS CASE COMING TO BE HEARD on Defendant's Motion to Vacate Judgment, the Court being fully advised in the premises,

THE COURT HEREBY FINDS AND ORDERS:

1. On August 9, 2017, this court found that Defendant Agpawa had been convicted of felony mail fraud in 1999 in the US District Court for the Northern District of Illinois. As noted then, the court had no reason to doubt (and Plaintiff did not dispute) that Mr. Agpawa had been reformed since his now 18-year-old conviction or that he is a man of good standing in his community who many people of Markham support. Nevertheless, the court also found that as a result of his conviction he was ineligible to hold municipal office under Illinois law.

2. Plaintiff does not dispute that, as asserted in the instant Motion, Illinois Governor Bruce Rauner, on September 20, 2018, issued a "Restoration of Rights of Citizenship" purporting to restore all rights Agpawa had "forfeited under Illinois law as a result of [his] federal conviction." Mot. Ex. B.

3. It is clear that the Governor has complete authority to grant reprieves from the consequences of criminal convictions to the maximum extent of Illinois law, including Illinois-specific consequences of federal convictions. See *People ex rel. Symonds v. Gualano*, 124 Ill. App. 2d 208, 220 (1970); Illinois Const., Art. V, § 12.

4. Defendant's Motion is accordingly GRANTED in that the court vacates the effect of its August 9, 2017 Order and hereby finds that, by virtue of a Restoration of Rights issued by the Governor of the State of Illinois, Defendant Roger Agpawa's 1999 federal conviction for mail fraud no longer renders him ineligible to hold municipal office in Illinois.

ENTERED:

JUDGE DAVID B. ATKINS

SEP 28 2018

Circuit Court-1879

Judge David B. Atkins

The Court.

Page 1 of 1

C 481